(21 App. Div. 321.)

## FOX v. BUFFALO PARK.

(Supreme Court, Appellate Division, Fourth Department. October 15, 1897.)

1. NEGLIGENCE—CONSTRUCTION OF PUBLIC BUILDING FOR PUBLIC ENTERTAINMENTS.

The owner of a building or structure designed for public exhibitions and entertainments, to which an admission fee is charged, is responsible for defects in the original construction of the building or structure, though he had no actual knowledge of the defect, and though he employed a contractor for the construction, and a competent architect to oversee it.

2. SAME—LEASE.

The owner of the structure cannot escape liability for injury to a member of the public who attended an exhibition therein, on the ground that the exhibition was given by a lessee who had leased the structure for a day. By receiving the rent, the owner participated in the wong of holding out an invitation to the public to come upon the dangerous and unsafe structure.

Adams, J., dissenting.

3. EXPERT EVIDENCE—ON WHAT SUBJECTS COMPETENT—STRENGTH OF STRUCTURE.

Persons who have made special study of the strength of materials and the proper mode of building structures to sustain weights may testify whether a structure has been built sufficiently strong to withstand the strain which would be put upon it in using it for the purpose for which it was intended.

Appeal from trial term, Erie county.

Action by Annie E. Fox against Buffalo Park for personal injuries. From a judgment for plaintiff, and from an order denying its motion for a new trial on the minutes, defendant appeals. Affirmed.

The defendant is a domestic corporation, owning grounds in the city of Buffalo, on which it maintains racing tracks, one of which is adapted to bicycle

racing. It gives races itself, and lets the grounds to others for racing purposes. In the spring of 1892 it built a grand stand on the grounds about 400 feet long and 100 feet wide, two stories high. Upon this stand were seats for spectators to witness racing and other entertainments upon the grounds. The general construction of the stand was on upright posts 12 by 12. Resting on these posts were 4 by 12 girders, bolted in the posts to support the floor. On the top of the girders were pieces 2 by 4 Norway pine, nailed. The joists supporting the flooring to the structure were eighteen feet long, and rested at their ends on the strips of 2 by 4. These joists were 2 by 12 dressed Norway pine, spaced to 16 inch centers, and were notched at the end four inches from the bottom up, and rested on the strips above described. There was no bridging between the joists. The purpose of the bridging was to distribute the weight from one joist to another. There were several stairways leading into the stand. From the time of the construction of this stand until the 4th day of July, 1895, the stand had been used to witness exhibitions of racing, etc., without accident, as far as this case discloses. For that day the defendant leased the stand to the Press Cycling Club of Buffalo, for which the club agreed to pay the defendant $200. Bicycle races were to be witnessed on that day, and the plaintiff, with her husband and daughter (tickets having been purchased for them), went upon the stand, passing up two flights of stairs, to the top floor. She was unable at first to obtain a seat, but finally did so. Finally she attempted to leave the stand, went down the stairs one flight, and got to a landing, when a crash occurred, and portions of the platform and stairway, about 18 feet square, fell, and the plaintiff, with others, was seriously injured, for which injury she instituted this action against the defendant, and recovered a verdict of $5,000. The complaint alleges that the defendant, in erecting the stand and stairway, did so in a careless, negligent, and unskillful manner, and did not build the stand or its approaches so that it would be safe for ordinary crowds to go upon the same, and that the supports to the stand were improperly joined, and not sufficiently strengthened, and "that the said defendant did violate its duty in erecting the said stand and stairway in the unsafe and careless manner in which it was erected, and that it became a public nuisance by reason of the faulty construction of the same, and was dangerous to the life and limb of persons who might go thereon if a large crowd congregated upon any particular spot." Evidence was given tending to show that the accident was caused by the insufficient fastening of the 2 by 4 strips which supported the joists, and which gave way under the weight and pressure from above, and the weakness of the joists caused by the notching and want of bridging and other defects in the construction. This evidence was given by several experts who were familiar with building houses and other structures, and from the appearance of the wreck of the stand after the accident. This evidence was in no manner contradicted except from the inference that might arise from the fact that the stand had withstood former crowds without accident. The number of people upon the stand at the time of the accident was about 3,800, judging from the number of tickets sold. The defendant gave no evidence except to introduce its secretary and treasurer, who testified that he looked after the business operations of the concern in the construction of the grand stand; that the association employed an architect in good standing to prepare plans; and that a contract for the construction was let to one Gordon, who did the work of construction; and that the seating capacity of the stand was 3,500. What the plans or contract provided as to the construction of the work, this witness was unable to state, and no proof was given as to the same further than as above stated. It did not appear whether the person who constructed the grand stand did so in a careful manner or otherwise. Judgment was entered for the plaintiff upon the verdict. The defendant made a motion for a new trial upon the minutes, before the trial court, which was denied, and from the judgment and the order denying such motion the defendant appeals. Other facts are stated in the opinion of the court.

Argued before HARDIN, P. J., and ADAMS, GREEN, and WARD, JJ.

John G. Milburn, for appellant.

Moses Shire, for respondent.

WARD, J.   The questions upon this appeal arise upon exceptions to the charge of the trial court, and upon the reception of certain evidence given by expert witnesses introduced by the plaintiff.   The learned trial judge, in his charge to the jury, after referring to the evidence as to the construction of the building and of the accident and other evidence, said:

"The defendant constructed the grand stand by its employé, the contractor; and if it was improperly constructed, so that it was a dangerous structure, the defendant was responsible for its condition.   I do not think it was necessary to have called the attention, directly, of the superintendent or directors [of the defendant], or whoever had the management of the concern, to call their attention directly to the defects; it having itself erected the structure by letting the contract to this contractor."

After referring to the fact that the stand had before been used for large crowds of people without accident, the judge continues:

"Gentlemen, if you come to the conclusion that this was a fairly, reasonably well constructed structure, and that, by some unusual strain that nobody had ever thought it would be subjected to, it was broken down on this occasion, then the plaintiff is not entitled to recover against the defendant; but if you come to the conclusion that it was improperly constructed, that it was defective, so that it was dangerous to be used for these purposes, then I think the plaintiff has made out a cause of action against the defendant; and the only remaining question will be, if you come to that conclusion, the amount of damages the plaintiff is entitled to recover."

The defendant's counsel excepted to that portion of the charge that if the jury should find that the building was improperly constructed, so that it was in a dangerous condition, the defendant was responsible; and he also excepted to that portion of the charge that stated that it was not necessary, if the building was defectively constructed, that notice of the defect should be brought to the defendant or its officers,—to which the court said:

"Any other way except the fact of its construction?   By Defendant's Counsel: You place the liability on the original construction?   The Court: Yes, sir."

The defendant's counsel then requested the court to charge that knowledge could not be imputed to the defendant by this original construction simply because it was the owner of the building, if it had not actual knowledge.   This was declined, and the defendant excepted.

The position of the appellant is that its responsibility is to be measured by the rules governing cases of negligence, and that it cannot be made liable except it be shown that the officers of the corporation knew or should have known that the grand stand was improperly constructed, and was dangerous.   The respondent's position is that the structure as created was a nuisance; that the rules governing actions of negligence do not apply; but; if this action be regarded as one of negligence, no notice was necessary to the defendant's officers of the dangerous condition of the structure, as the defendant itself had created the structure.

In Heeg v. Licht, 80 N. Y. 579, 582, et seq., the court of appeals points out a number of instances of nuisances, and at page 582 defines a private nuisance to be "anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another.   3 Bl. Comm. 216.

Any unwarrantable, unreasonable, or unlawful use by a person of his own property, real or personal, to the injury of another, comes within the definition stated, and renders the owner or possessor liable for all damages arising from such use."

Swords v. Edgar, 59 N. Y. 28, is much like the case at bar in principle. The defendants were the owners of the south half of pier No. 11 in the city of New York. On the 9th of July, 1866, the plaintiff's intestate, who was a longshoreman, was assisting in discharging a cargo of iron from a steamer upon the south side of this pier. It fell, and he received injuries causing his death. The pier at the time was in the possession of a steamship company under a lease from the defendants, the exclusive possession and control at the time of the accident of the pier being in the lessee. The negligence charged was that at the time of the lease the timbers of the pier had become rotten and unfit for use, so that the pier was in an unsafe and dangerous condition, while the flooring was apparently sound; also, that there was a defect in the original construction of the pier. It was held that, as the pier was in a defective and unsafe condition at the time of the leasing, the defendant, who was receiving benefit by way of rent from the lessee, was liable for the consequences to the deceased; and Folger, J., says, at page 36:

"It is plain from what we have before said that there was once a duty upon the defendants, as owners of the pier, to maintain it in a safe condition. They did not do this. They leased it in an unsafe state, and took a rent for the use of it. Thereby they became liable to any one lawfully upon it who suffered damages in consequence of its state of insecurity. The pier was unsafe on and before the day of the lease. The defendants were certainly at that time charged with the duty of putting it and keeping it in a safe condition."

Again, the learned judge says, at page 35:

"A lessor of premises not per se a nuisance, but which become so only by the manner in which they are used by the lessee, is not liable therefor. Rich v. Basterfield, 4 Man. G. & S. 783. But that rule may not apply here. A pier so defective and insecure when it is leased as that a subsequent injury, received in the proper use of it as if sound, is consequent upon its original condition, is, for the purposes of such an action as this, per se a nuisance."

In Jarvis v. Baxter, 52 N. Y. Super. Ct. 109, it was held that a building being constructed in an improper and unsafe manner, with inferior materials, so that a portion of its walls fell upon another building, and caused damage, was a nuisance.

A house cut up into small apartments, inhabited by a crowd of people, in a filthy condition, was held in Meeker v. Van Rensselaer, 15 Wend. 396, to be a nuisance.

Regarding the structure as a nuisance, the authorities all agree that the person or corporation who creates the nuisance is responsible for the damages that result from it. Swords v. Edgar, supra; Ahern v. Steele, 115 N. Y. 209, 22 N. E. 193; Sexton v. Zett, 44 N. Y. 430; Clifford v. Dam, 81 N. Y. 52; Vaughan v. Railway Co., 72 Hun, 471, 25 N. Y. Supp. 246; Wood, Nuis. p. 442, § 41.

The trial court submitted to the jury the question whether the grand stand had been improperly constructed and was dangerous, and it was only in the event they so found that the court charged that the

defendant was liable. The inference from the verdict is that the jury found that the structure was created unsafe and dangerous by the defendant itself.

But it is perhaps unnecessary to go to the extent of holding that the grand stand was a nuisance so far as the disposition of this case is concerned, as another principle intervenes which would seem to establish the liability of the defendant. While it is undoubtedly true in ordinary cases in the leasing of buildings that there is no implied warranty on the part of the lessor that the buildings are fit and safe for the purposes for which they are leased, the rule is different in regard to buildings and structures in which public exhibitions and entertainments are designed to be given, and for admissions to which the lessors directly or indirectly receive compensation. In such cases the lessors or owners of the buildings or structures hold out to the public that the structures are reasonably safe for the purposes for which they are let or used, and impliedly undertake that due care has been exercised in the erection of the buildings. Francis v. Cockrell, L. R. 5 Q. B. 184; Swords v. Edgar, supra; Camp v. Wood, 76 N. Y. 92; Beck v. Carter, 68 N. Y. 283; Grote v. Railroad Co., 2 Exch. 251; Campbell v. Sugar Co., 62 Me. 552; Wendell v. Baxter, 12 Gray, 494.

The headnote in Francis v. Cockrell, supra, is as follows:

"A man who causes a building to be erected for viewing a public exhibition, and admits persons on payment of money to a seat in the building, impliedly undertakes that due care has been exercised in the erection, and that the building is reasonably fit for the purpose; and it is immaterial whether the money is to be appropriated to his own use or not."

### Chief Baron Kelly, in deciding that case, says:

"There is a principle which I hold to be well established by all the authorities that one who lets for hire or engages for the supply of any article or thing, whether it be a carriage to be ridden in, or a bridge to be passed over, or a stand from which to view a steeple chase, or a place to be sat in by anybody who is to witness a spectacle, for a pecuniary consideration, does warrant and does impliedly contract that the article or thing is reasonably fit for the purpose to which it is to be applied."

### Baron Martin, in the same case, says:

"I do not at all pretend to say whether the relation of the parties raised a contract or a duty. It seems to me exactly the same thing; but I am of opinion that when a man has erected a stand of this kind for profit, that he contracts impliedly with each individual who enters there, and pays money to him for the entrance to it, that it is reasonably fit and proper for the purpose; or, if you choose to put it in another form, that it is the duty of the person who so holds out the building of this sort to have it in a fit and proper state for the safe reception of the persons who are admitted."

In Camp v. Wood, supra, the defendant had let a hall for a dance, to which all who applied were admitted upon payment of the entrance fee. Plaintiff, who paid the fee, went out of a door that had been improperly left open, upon an awning, and was injured. Judge Andrews says:

"In this case, the defendant, by letting the hall for public purposes, held out to the public that the hall was safe, and he was bound to exercise care to provide safe arrangements for the entrance and departure of people who came there upon his invitation."

The principle thus asserted and sustained is a correct one, and is founded in a wise public policy. Structures that are reared for public exhibitions, such as the one in question, are erected for the purpose of accommodating great numbers of people at times and under conditions often of excitement, when the numbers, activity, and demonstrations of the people may subject the structure to great weight and strain; and these conditions must be regarded as within the contemplation of the builders of the structures when they were created. These builders must be held responsible for the highest degree of care in constructing such concerns; and where it is clearly established by the evidence, as in the case at bar, that the structure was unsafe for the purpose for which it was created, and dangerous, the inference is irresistible of the want of such care on the part of such builders, and it was not error in the trial court to charge the jury, under the circumstances of this case, that, if they found that the grand stand when built was unsafe and dangerous, the defendant was liable.

.But the appellant's counsel contends that, inasmuch as the grand stand at the time of the accident was in the possession of the lessee (the Press Cycling Club), it was that party, if any, that held out to the public the assurance of safety, and it was not this defendant. This contention cannot prevail. It was the defendant's stand, created by it. For years it had used it for public exhibitions of this character. The defendant participated in the profits of the undertaking with the Press Club on the single day that it had been rented to the Press Club, for a rental received by the defendant of $200. It was thus a party to the wrong of holding out an invitation to the public to come upon this dangerous and unsafe structure, and cannot escape liability. As we have seen in the Cockrell Case, the court held it was immaterial whether the person causing a building of this character to be erected with a view of public exhibitions appropriated the money received from such exhibitions to his own use or not; and, as we have also seen, Judge Folger, in the Sword Case, connects the liability of the defendants with the accident under which the plaintiff's intestate was killed in part by their receiving rent from the lessee for the use of the pier.

But, assuming that the case at bar may be regarded as one of negligence, how is the situation changed? The defect in the grand stand was one of original construction. The defendant itself creates an unsafe and dangerous structure. It was its duty to know that that structure was safe, or at least to exercise the highest degree of care to that end. It has not performed that duty. Can it be defended by saying that its officers and agents may not have known, as a matter of fact, that the structure was unsafe and dangerous? It is absurd to claim that the plaintiff in this action must show notice or knowledge of the wrongdoing to the very party that has committed the wrong. Therefore the doctrine of notice or of knowledge of which the learned counsel for the appellant contends has no application to this case, whether we regard the structure as a nuisance or otherwise. If the plaintiff had brought an action against the cycling company, it would have been incumbent upon her to have shown that, as the lessee of the defendant, it had notice of the defective condition of

the stand, or should with reasonable care have known of its condition; or if the action against this defendant had been based upon the ground that the dangerous condition of the grand stand had grown out of causes which had intervened, as by decay or otherwise, since the creation of the structure, then, under some of the cases, knowledge of such causes or want of reasonable care to have ascertained the condition of the structure on the part of the defendant should have been shown. But neither of these situations obtained in this case, and we are here confronted with the naked proposition whether the creator of a cause of mischief must be shown to have known the nature of the act which he was committing, independent of the presumption that a man who is engaged in the wrongful or improper act knows what he is about and the probable consequences of such acts.

The learned counsel for the appellant relies upon the cases of Edwards v. Railroad Co., 98 N. Y. 245, and Timlin v. Oil Co., 126 N. Y. 514, 27 N. E. 786. Neither of these cases assists the defendant nor is pertinent here. In the Edwards Case the defendant was the lessee of a building designed for public entertainment, and there was absence of evidence tending to show that the defendant knew or had reason to know the defect in the gallery which fell upon the plaintiff and injured him. In the Timlin Case the judgment was reversed as against certain individual defendants who were lessees of the premises. In neither of these cases was the action brought against a party charged with the defects in the original construction of the structure causing the injury; and the remarks of the learned judges in those cases must be regarded as applying to the cases upon which they were passing. The appellant's counsel intimates that the Swords Case was in a measure overruled by these two cases, and states that that case was decided by a divided court. It is a curious fact in the history of the decision of these important questions that the Swords Case, the Edwards Case (upon which the counsel relies), and the Ahern Case, supra, were all decided by four judges as against the dissent of the other three. But in the Edwards and Timlin Cases there is no attempt to overrule or question the doctrine laid down in the Swords Case, but, rather, that case is approved upon the ground upon which it was decided, and properly distinguished from the other two cases.

The views here expressed do not conflict with the proposition advanced in railroad cases that the defendant may be exonerated even as against injury to its passengers upon showing that it exercised the highest degree of care with reference to the roadbed, rolling stock, or machinery which caused the injury. The charge of the trial judge is to be considered in connection with the case and evidence before him. As we have seen, there was no attempt on the part of the defendant in this case to show any degree of care in the creation of the grand stand beyond the simple fact that it hired an architect who was competent, and intrusted the work to a builder whose competency was not established. So that the question as to whether the defendant exercised a proper degree of care in this case was not before the trial court. A state of facts were proved, however, that justified the jury in reaching the conclusion that the structure was dangerous, and was

carelessly and improperly constructed; and, when that view was reached, the defendant's liability was fixed.

The other question arising upon this appeal results from exceptions taken to expert testimony introduced by the plaintiff. A builder who had testified to the weakness of the joists as affected by the notching thereof was asked whether such notching in the judgment of the witness rendered the joists unsafe; in other words, whether they were strong enough to bear the strain that would be put upon them. A question was addressed to another witness as to whether the floor of the structure, as it was constructed, was of sufficient strength to withstand a crowd using it for the purpose for which it was intended. The witness was of the opinion that it was not. This evidence was received upon the theory that the jury, not being builders and acquainted with the conditions necessary to secure strength and security to a structure of this character, could be enlightened by the judgment and experience of men who were familiar with such structures, and with how strength and proportion should be adjusted in the things that combine to make up the structure in order to secure safety. This situation presents a very different case from those cited by the learned counsel for the defendant: Harley v. Manufacturing Co., 142 N. Y. 31, at page 38, 36 N. E. 813; Schneider v. Railroad Co., 133 N. Y. 583, 589, 30 N. E. 752. In the first case a witness was asked his opinion as to the safety of a belt fastener, a plain contrivance, that the jury could understand, and about which they could easily form a judgment from a description of the article. In the second case it was properly held that the mode of inspection and examination of the running gear of a car by one witness could not be shown improper by the opinion of another witness that it was so. It is no longer a valid objection to the expression of an opinion by a witness that it is upon the precise question which the jury is to determine. Van Wycklen v. City of Brooklyn, 118 N. Y. 429, 24 N. E. 179; Transportation Line v. Hope, 95 U. S. 297. The cases of Scattergood v. Wood, 79 N. Y. 263, Baird v. Daly, 68 N. Y. 547, and Moore v. Westervelt, 27 N. Y. 234, sustain the admissibility of the evidence objected to in this case. The precise question we are considering here was decided in the case of Prendible v. Manufacturing Co., 160 Mass. 131, 35 N. E. 675, by the supreme court of Massachusetts, where it was held that a person who has made a special study of the strength of materials and the proper mode of building structures to sustain weight is competent to give his opinion as to whether a staging erected in a specified way can safely be trusted to carry particular loads.

These views lead to the conclusion that the judgment and order appealed from should be affirmed. All concur, except Adams, J., dissenting, and FOLLETT, J., not sitting.

GREEN, J. I concur in the result reached by Judge WARD in his opinion. I think the defendant chargeable with negligence in omitting, during the period of three years, to have the structure examined and inspected by some competent architect or builder. In

view of the nature or character of this particular structure and the uses to which it was devoted, it was liable to become weakened by the weight of many people attending the races and their demonstrations upon the structure, whereby some portions of the supports may have been thrown out of proper positions or weakened. It does not appear that any such inspection was ever made, although the character of the erection would seem to require it; and it would seem that such a duty or obligation rested upon the defendant, under the circumstances of this case.

In Francis v. Cockrell, L. R. 5 Q. B. 193, the court said:

"He employed competent and proper persons, who had efficiently executed similar work on previous occasions. The circumstance that the defendant did not himself survey, or employ any one to survey, the stand, after it was erected, does not in itself establish the charge of negligence, for it does not appear that the defect was such as could have been discovered on inspection; and, even if it had, it cannot be laid down as necessarily a want of care not to inspect, although it would in some circumstances be evidence from which a jury might properly find that due care had not been taken."

It will be seen upon examination that in that case the grand stand had been completed only the day before the accident (pages 186, 187), while in 'the present case the structure had been standing during a period of three years, and was used and occupied during those years by a large number of spectators attending the races, under the defendant's management; and yet there is no evidence that its continuous safety and security were ever tested by inspection.

The collapse of a portion of the structure was sufficient prima facie evidence of negligence. Mullen v. St. John, 57 N. Y. 567; Volkmar v. Railway Co., 134 N. Y. 418, 31 N. E. 870; Cosulich v. Oil Co., 122 N. Y. 127, 25 N. E. 259. The defendant was under obligation to maintain the structure in a reasonably safe condition, and fit for the purposes for which it was let, so far as the exercise of reasonable care and skill could make it so. That it was not in such condition, in view of such purposes, was sufficiently evident from the happening of the accident and the proof given as to its structural defects. That the defendant exercised reasonable and proper care, or any care, in ascertaining its condition for the safety and security of the spectators, does not appear. Under the circumstances, the collapse of the structure must be held prima facie evidence of negligence. In such a case the burden of proof rests upon the defendant to rebut the presumption of negligence, arising from the facts, by affirmative evidence showing the adoption of reasonable precautions to avoid accident. It should be remarked that the defendant had surrendered possession of the premises to the "lessee" for but a single day. It still owed a continuing duty to the public, and was not relieved from its performance by letting the structure to another for so short a period of time. Assuming that there is no implied undertaking on the part of the defendant that due care and skill had been used by the persons whom it employed as independent contractors to erect the stand, and that it is not responsible for the negligent manner of its original construction, still, when it is considered that it was erected for the accommodation of large numbers of people, the defendant was bound to use extra

precaution in testing and inspecting the structure, at reasonable intervals of time, to protect them from loss of life and limb.   The defendant owed this duty to the public, and it could not absolve itself from its performance, nor escape its liability for the consequences resulting so disastrously to the people invited there, by letting it for hire for a temporary purpose.

In Edwards v. Railroad Co., 98 N. Y. 245, "there was no proof even that any of the timbers in the gallery were too small or weak, and that they broke, or that they were not properly joined together and supported, or that the gallery was in any respect negligently constructed." The court held that negligence was not imputable to defendant for not foreseeing that the contemplated use of the place for a pedestrian match would result in filling the gallery with a large and unusual number of people.   The decision in that case did not involve the question we consider here, to wit, the duty of the owner of a structure erected for public entertainments or amusements to examine and inspect the same for the purpose of determining whether its safety and security for the accommodation of the public has been in any manner weakened or impaired by previous use.

ADAMS, J. (dissenting).   The plaintiff brings this action to recover damages for personal injuries sustained by her in consequence of the falling of a stairway in a grand stand which the defendant had erected upon its grounds in the city of Buffalo, and which it had leased to the Press Cycling Club for the 4th of July, 1895.   The complaint contains but a single count, and consequently, if the plaintiff's recovery is to be sustained, it must be solely upon the theory which lies at the foundation of her action, and which is that the grand stand in question was so defectively constructed by the defendant as to render it unsafe for the purposes for which it was designed, in consequence of which it became a public nuisance.   The evidence given in support of this contention tends to prove that the bearing pieces of the structure were insufficiently nailed, and that there was an unnecessary number of notches for bearing purposes in the joists, which tended in some degree to lessen their supporting capacity.   This evidence, while it may not be absolutely convincing in its character, is probably sufficient to support the verdict of the jury, and it must consequently be regarded as conclusive upon the question of defective construction.

Conceding, therefore, for the purpose of this review, that the grand stand was improperly constructed, the one vital question which presents itself for our consideration is:   Does this fact, in the absence of any allegation of negligence or of the proof of other delictum, establish the plaintiff's right to recover?   There was no attempt made upon the trial to prove that the defendant or any of its officers knew, or had reasonable cause to suppose, that the structural weakness pointed out by the plaintiff's witnesses existed.   On the contrary, it was undisputed that the grand stand was erected by a builder of experience, and under the personal supervision of a competent architect, who also furnished the plans therefor.   Moreover, it was made to appear that the structure had been used for several seasons; that at times a much larger number of persons had occupied it than upon the

occasion when the plaintiff received her injury; and that, if any defect or weakness really existed, experience and use had not developed the same. Nevertheless, the learned trial justice instructed the jury that, if the stand was improperly constructed, the defendant was liable, whether it had knowledge of that fact or not; and he also refused to charge, in response to a request of the defendant's counsel, that the defendant could only be held liable in the event that the jury should find that, when the lease was made to the Press Club, the structure was dangerous for the purpose for which it was leased, and the defendant knew or had reason to know that fact. The theory thus adopted by the learned trial court in its disposition of the case would undoubtedly have been the correct one had the plaintiff occupied the grand stand by invitation of, and for a compensation paid to, the defendant; for in these circumstances the invitation would carry with it an implied assurance, upon which the plaintiff and all others similarly situated might have relied, that the structure was entirely safe for the purpose for which it was designed; and if, in point of fact, it was so insecurely and improperly constructed as to render it unsafe, the law would regard it as a nuisance, for the creation of which the defendant could not escape liability by insisting that it had no knowledge of its actual condition. This was the rule laid down in the English case of Francis v. Cockrell, L. R. 5 Q. B. 501; and it is one worthy of the recognition which it has received in this country, because it is founded in common sense. But the difficulty which I encounter in adopting the theory of the trial court is that the undisputed facts of the case do not, in my opinion, admit of the application of this rule.

The plaintiff at the time of the accident was not occupying this grand stand by the defendant's permission. She was there upon the invitation of the Press Cycling Club, the defendant's lessee. In no view of the case, therefore, can it be said that there was any privity of contract between her and the defendant; and while it is true that the premises, including the grand stand in question, were designed as a place of public amusement, and were doubtless leased by the defendant to the Press Cycling Club with full knowledge that they were to be used for that purpose, still these facts did not, in my opinion, establish an implied covenant or furnish any assurance, as between this defendant and the plaintiff, that the demised premises were fit for the particular purpose for which the tenant intended to use them. Thomp. Neg. 323. It may be safely assumed that, while the lessee was in possession, the defendant was devested of all control over the demised premises; and consequently, if the former had permitted the grand stand to become packed with spectators far beyond its capacity, or to an extent incompatible with personal safety, the defendant would have been powerless to prevent it; and this circumstance of itself, in my opinion, furnishes a sufficient reason why no liability should attach to the lessor in the absence of negligence or other delictum.

It was said in the case of Edwards v. Railroad Co., 98 N. Y. 245, that:

"If one builds a house for public amusements or entertainments, and lets it for those purposes, knowing that it is so imperfectly and carelessly built that it

is liable to go to pieces in the ordinary use for which it is designed, he is liable to the persons injured through his carelessness. And this rule of responsibility goes far enough for the protection of lessees and of the public generally. It is but a just and reasonable application of the maxim, 'Sic utere tuo ut alienum non lædas.' It imposes liability upon the landlord for his delictum, and the tenant is also liable, not only for negligence, but also upon the authority of the case of Francis v. Cockrell, by virtue of an implied contract which he makes with all persons whom, for a compensation, he invites or induces to enter his building to witness public entertainments given therein by him or under his supervision. A rule which would place a greater responsibility upon a grantor or upon a landlord while out of possession and deprived of the control of his premises would, as stated in many cases, lead to much injustice, embarrassment, and inconvenience. There is no case which holds that the negligence of a landlord is to be inferred simply from the fact that a building which he lets breaks down. It may break down under such circumstances that the inference of negligence is irresistible, and may properly be drawn; but the facts must show that he knew or had reason to know that the structure was dangerously weak and imperfect. But where the landlord has created no nuisance, and is guilty of no willful wrong or fraud or culpable negligence, no case can be found imposing any liability upon him for any injury suffered by a person occupying or going upon the premises during the term of the demise; and there is no distinction stated in any authority between cases of a demise of dwelling houses and of buildings to be used for public purposes. * * *"

It is insisted, however, that the doctrine of this case is in conflict with that laid down in the earlier case of Swords v. Edgar, 59 N. Y. 28, where it was held that the lessors of a pier were guilty of nonfeasance or misfeasance in having leased their premises while in a defective and dangerous condition. It is not to be denied that there is some force in this contention; for, in reviewing the decision in the Swords Case, supra, the court of appeals referred to it as one which "was made against the dissent of three judges, and after overruling several cases decided in courts of high authority in this country and England." Edwards v. Railroad Co., supra. But even in that case the learned judge who wrote the opinion appears to have laid great stress upon the fact that the lessors leased the pier with knowledge of its condition, for he says:

"There is no suggestion in the case of want of knowledge on their part of its actual condition when leased by them, and the facts of the case are such that they are chargeable with knowledge of its actual dangerous state." 59 N. Y. 39.

The doctrine of the Edwards Case was reiterated in Wolf v. Kilpatrick, 101 N. Y. 152, 4 N. E. 188; and in a still more recent case, where the owner had leased premises upon which there existed a nuisance dangerous to the public, the trial court charged the jury that the plaintiff could not recover against the defendant unless they were satisfied by the evidence that the latter knew or ought to have known of the dangerous condition of his premises at the time of leasing the same, and this was held to be a correct statement of the law. Timlin v. Oil Co., 126 N. Y. 514–523, 27 N. E. 786. The only reason urged why a different rule should be applied to the case in hand seems to arise out of the fact that the defendant caused this grand stand to be constructed, and it is insisted that it thereby created the nuisance, if one existed at all. Strictly speaking, this is perhaps true; but in the peculiar circumstances of the case, which have already been detailed, I am not willing to hold either that the structure in question was a

public nuisance, or that the defendant was liable to this plaintiff for its defective construction.

It seems to me quite clear, therefore, that the learned trial justice was in error when he instructed the jury that the defendant's liability did not depend upon its knowledge of the defects complained of, and for this reason I think a new trial should be granted.