### SEBECK v. PLATTDEUTSCHE VOLKSFEST VEREIN.

(Circuit Court of Appeals, Second Circuit. July 1, 1903.)

No. 129.

1. NEGLIGENCE—AMUSEMENT GROUNDS—FIREWORKS—CARE REQUIRED.

Defendant was the owner of a park, at which it held public amusements, for admission to which it charged a fee. Plaintiff attended a festival held at the park, at which defendant gave an exhibition of fireworks, which were manufactured and furnished by a skilled manufacturer, who had previously furnished the same to defendant. Plaintiff was injured by fragments of a mortar, which burst by the premature explosion of a bomb, alleged to have resulted from negligence in its construction. *Held*, that an instruction that it was incumbent on defendant to use the care and prudence which would have been exercised by an ordinarily prudent and intelligent man to protect plaintiff from unnecessary risks, and that if defendant, by its amusement committee, who were not experts, exercised due care to employ a competent and skillful person to manufacture, produce, and discharge the fireworks, and exercised proper precautions to protect spectators by keeping them at a reasonable distance from the place of discharge, it was not guilty of negligence, was proper.

2. SAME—INSPECTION.

Where plaintiff was injured by the premature explosion of a bomb, discharged as a part of certain fireworks on an amusement field, which he attended as a spectator, and the evidence tended to show that the accident may have resulted from the improper charging and timing of the bomb, but such defect, if it existed, was not apparent or discoverable on inspection, a failure on the part of the owners of the amusement field to ascertain such defect was not negligence.

3. SAME.

Where plaintiff, a spectator at a park where certain fireworks were discharged, was injured by the premature bursting of a bomb, and it appeared that defendant exercised proper precautions for the protection of the spectators by keeping them a reasonable distance from the place of danger, the fact that one witness testified that the place where the fireworks were discharged was so narrow that it was not a safe one to set off bombs of the character used did not require a charge that, if the jury found that the place was so small as to render it a dangerous one, they must find for plaintiff; the court having charged that it was a question of fact for the jury whether the place in which they were set off, in view of the precautions which were taken to keep the audience a proper distance away, was reasonably safe.

---

¶ 1. Negligence causing injury to persons at public entertainment or exhibition, see note to Texas State Fair v. Brittain, 56 C. C. A. 502.

**4. SAME—REMARKS BY COURT.**

Error, if any, in the court's stating to plaintiff's counsel during the trial that he was injecting a false issue into the case, was cured by a statement in the court's charge that perhaps he ought not to have made such remark, and then fully stating the issues as claimed by both parties.

**5. SAME—WEIGHT OF EVIDENCE—OPINION OF COURT.**

In an action for injuries to a spectator at an amusement park by the bursting of a bomb, discharged as part of certain fireworks, an instruction that, if defendant's committee employed a couple of Italians about whom they knew nothing to produce and discharge the fireworks, they did not exercise the prudence which an intelligent man would have exercised, and then stating, "For myself I do not believe for a minute that they did any such thing, but that is a question of fact for you to determine, and not me," was not error.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon a writ of error to review a judgment rendered in favor of defendant by the United States Circuit Court for the Southern District of New York on a verdict of the jury in an action brought by plaintiff for damages caused by the explosion of a bomb at an exhibition of fireworks given on defendant's grounds.

Clarence P. Moser, for plaintiff in error.
R. F. Rohe, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The defendant is the owner of certain grounds, known as "Schuetzen Park," in North Bergen, N. J., at which it holds festivals and other public entertainments, for admission to which it charges a fee. On the night of August 21, 1898, it held its annual festival, at which, among other things, was given an exhibition of fireworks. The plaintiff attended said exhibition and paid an admission fee of 25 cents. An exploding bomb burst the mortar in which it had been placed, and some fragments of the mortar struck and injured the plaintiff. He brought suit in the circuit court of New Jersey to recover for said injuries, but was nonsuited therein, and said nonsuit was affirmed by the Court of Appeals in said state. 46 Atl. 631. Said court in its opinion reviewed the facts attending said accident, and held, inter alia, as follows:

"The defendant having invited the public to its park, it was chargeable with the duty of using reasonable care to see that the premises were kept in a safe condition for the use of its guests; and if the exhibition, although given by an independent contractor, was of a character to jeopardize the safety of those who were present on the defendant's invitation, the duty was cast upon the latter of taking due precautions to guard against injury. We, however, have been able to find nothing in the evidence which will justify the conclusion that the injuries of the plaintiff resulted from the failure of the defendant to properly perform any duty which it owed to him for his protection. * * * That the premature explosion of the bomb in question resulted either from carelessness in its construction or in setting it off can fairly be presumed from the testimony; but for such carelessness the defendant is not responsible. Its duty in that regard was limited to the use of reasonable care in selecting, as the person with whom to make its contract, one who is skilled in the manufacturing of fireworks and conducting exhibitions thereof; and the evidence clearly shows that it fully dis-

charged this duty in the selection of Gerhardt. Assuming that the accident resulted from such carelessness as has been recited, the blame for it attaches, not to the defendant, but to Gerhardt."

Thereafter, the plaintiff brought this suit. It appeared from the evidence herein that defendant designated the place where the fireworks were to be discharged, and that it was the place which had been used for similar purposes for nearly 20 years, and that a committee of members of the association and a sufficient force of policemen were engaged in keeping the spectators at a distance of from 100 feet to 150 feet from the fireworks. The fireworks were furnished by one Gerhardt, a person skilled in their manufacture and who had previously furnished same to defendant, and they were manufactured by his employés under a contract with the defendant by which the providing of the fireworks and the conducting of the exhibition were left in his hands. The accident resulted from the premature explosion of the bomb while inside the mortar.

It was not definitely shown what caused the explosion. It appears from the opinion of the New Jersey court that the evidence herein does not differ materially from that introduced on the former trial, except as hereinafter stated. Gerhardt, the fireworks manufacturer, had testified on the former trial that the galvanized iron mortars furnished by him were made under his orders and were of the same construction as was used generally by other fireworks manufacturers. He died after said trial and before this action was brought, and his son was produced by plaintiff to prove that the mortars and bombs were improperly constructed, and that the accident resulted from such faulty construction. He testified that one charge of powder was put into the lower compartment of the shell and another into the bomb itself at the upper end of the shell, said charges being connected by a fuse; that the lower charge was arranged to first throw the shell out of the mortar, and thereafter to ignite the fuse leading into the inside of the bomb. He explained the operation of the fuse as follows:

"If this fuse is not properly charged, if it is charged loosely, the flash from the charge that should drive out the contents of the mortar lights this charge, and it immediately flashes right inside the mortar, and then it explodes. If the bomb that burst on that night had been properly charged and properly timed, it could not have burst inside of the mortar. I saw the Italians make up these bombs. I learned how to make shells from them. The explosive in these shells was made out of black needle antimony. No American manufacturer would use that, because it is very dangerous."

On cross-examination he testified as follows:

"Q. You said that those bombs were improperly charged, didn't you? A. I didn't say they were improperly charged. I say there might have been one that was improperly connected. Q. There might have been? A. Yes; it often happens there is a mistake. Q. Do you believe that your father would employ men who did not understand their business? A. I don't think my father would employ men who did not understand their business. No, sir; but accidents are liable to happen."

He further testified that the mortars usually used in the trade in sending up these bombs are either steel or brass, and that when he used such mortars he buried or banked them, and that he did not use

sheet-iron mortars, such as those furnished by his father, because they were "dangerous" and because "they will not throw the shells off."

The court charged the jury generally that:

"Under those circumstances it was incumbent upon the defendant to use the care and prudence which would have been exercised by an ordinarily prudent and intelligent man to protect him, and to protect the others who were there, from unnecessary risks."

And further charged as follows:

"The defendant's amusement committee did not warrant the safety of spectators who were there. Everybody who went there went there with full knowledge that, where fireworks are to be exploded, there is always some risk. The amusement committee were not experts, and did not claim to be. So I instruct you that if you find that this defendant, by its amusement committee, exercised due care to employ a competent and skillful person to manufacture, produce, and discharge the fireworks upon this occasion, and in addition to that exercised proper precautions for the protection of the spectators by keeping them a reasonable distance from the place of discharge, if you find the defendant observed its duties in this respect, it was not guilty of negligence."

To this charge the plaintiff has excepted, and has further excepted to the refusal of the court to charge, as requested by the plaintiff, as follows:

"The defendant, by inviting the plaintiff and others to come upon its grounds and receiving pay therefor, assumed the duty of using reasonable care to protect them against injury."

But plaintiff's contention is that defendant owed to plaintiff "a higher duty than that implied by the term 'ordinary care,'" and that it was defendant's duty "to protect plaintiff from harm," and that, therefore, although defendant had employed a competent and skillful person to manufacture and conduct said exhibition, defendant was also bound to oversee and control the construction and operation of each piece of fireworks furnished for said exhibition. Although the court had, in effect, charged as thus requested, the ground of plaintiff's exception appears to be that the subsequent limitations therein had the effect to relieve the defendant from an alleged legal obligation to see that steel or brass mortars were used, or that the mortars were buried or banked, and that there was no negligence in the making or setting off of the fireworks.

An examination of the cases cited by plaintiff shows that they do not sustain his contentions. In Thompson v. Lowell, Lawrence & Haverhill Street Railway Company, 170 Mass. 577, 49 N. E. 913, 40 L. R. A. 345, 64 Am. St. Rep. 323, defendant advertised performances at, and hired a manager of, a pleasure resort on its line. The manager hired an armless performer to shoot at a target, and provided the target butt, which consisted of spruce plank with steel back. Plaintiff claimed that he was injured by a small fragment of bullet flying off from the impact when the bullet hit the butt. The court charged the jury that the defendant "was not responsible, unless the exhibition was in its nature such that it would necessarily or probably cause injury * * * unless guarded against, and the defendant failed to exercise due care to prevent harm." The jury having found for the plaintiff, defendant excepted to the above charge,

and claimed there. was no evidence of its negligence to go to the jury. The Supreme Court held that the instruction given was right, and that defendant was bound to use due care, and said as follows:

"And the jury might come to the conclusion that in the general arrangements for an exhibition of this nature the butt should be so placed that fragments which might fly from the impact of the bullets could not reach the spectators, and that due care was not taken in the arrangement of the stage with reference to possible accidents of this kind, and that the defendant itself failed in its duty in this respect. We cannot say that this was so much a matter of transitory detail that the manager alone was responsible for an omission to pay proper attention to securing the safety of .spectators from such a risk. The case, therefore, was rightly submitted to the jury."

In Barrett v. Lake Ontario Beach Improvement Company, 174 N. Y. 310, 66 N. E. 968, the defendant had constructed and maintained for years a toboggan slide connected with its bathing establishment, and had leased it to a third party for the season, reserving the right of entry to care for and preserve the structure. There was evidence that the toboggan slide as constructed by defendant was unsafe for the specific use intended by defendant, and for which it let it to the third party, and the sole question presented was that of "the omission or the neglect of a duty in preparing a structure to be put to a particular public use to make it reasonably fit or safe for that use." The Court of Appeals held that the court below properly left to the jury the question "whether the platform structure had been constructed with the due care which, in the judgment of prudent men, in view of the purpose, should have been exercised by the defendant."

These cases merely discuss and apply the exceptions to the general rule that an owner of property is not liable for damages occasioned by its unsafe condition while leased to and occupied by a tenant, and hold that the question of the exercise of due care in such excepted cases in construction and arrangement should be submitted to the jury. The principle upon which the liability of an owner of property rests, in the case of damages occasioned by its unsafe condition while leased to and occupied by a tenant, is the lessor's neglect or wrong. Thus in Barrett v. Lake Ontario Beach Improvement Company, supra, the court says:

"If the premises are rented for a public use, for which he knows that they are unfit and dangerous, he is guilty of negligence, and may become responsible to persons suffering injury while rightfully using them. Such instances would be where he lets a warehouse so imperfectly constructed that the floors will not support the weight necessarily upon them, or where he lets a building for public amusements or exhibitions, or other public purposes, and its construction is so unsafe structurally as to .be the cause of injury to any one. Francis v. Cockrell, L. R. 5 Q. B. 184, 501; Fox v. Buffalo Park, 21 App. Div. 321, 47 N. Y. Supp. 788, affirmed 163 N. Y. 559, 57 N. E. 1109; Edwards v. N. Y. C. & H. R. R. Co., 98 N. Y. 245, 50 Am. Rep. 659."

The same rule was applied in Thornton v. Maine State Agricultural Society (Me.) 53 Atl. 979. There the defendant was giving a fair and had let certain space for a shooting gallery. Plaintiff's intestate was killed by a bullet so unskillfully fired that it failed to hit the target, but passed outside a shield placed behind it. As to this shield the court said as follows:

"Was a shield 5 feet by 3½ feet, the top of which was only a little more than 6 feet from the ground, a sufficient protection against such shooting as should have been anticipated? We think a jury might reasonably conclude it was not; and a jury also might reasonably have concluded that the defendant was careless in placing a shooting gallery in such a place as this one was in."

It is true that the court in its discussion of the facts suggests that the jury might have believed that the defendant was liable for having failed to provide against the continuance of the use of unsuitable rifles and ammunition which it had inspected. But these suggestions are obiter, and the court concludes said discussion as follows:

"Upon the whole, we think the verdict is sustainable within the rules of law which imposed upon the defendant the duty of using reasonable care to furnish the plaintiff's intestate safe exhibition grounds to visit and safe approaches thereto."

So that what was really decided in said case was that the jury were justified in finding that the defendant failed to use ordinary care in the selection of such a location for a shooting gallery, and in permitting a shield to be used when it was patent that such shield would furnish insufficient protection.

In the case at bar we think the court fairly stated the law as to the obligations of the defendant, in view of the evidence. The inconclusive testimony of the single witness as to improper construction fails to state any fact from which negligence or wrong could be imputed to defendant. It only serves to show that the proximate cause of the accident may have been the improper charging and timing of the bomb, which caused it to burst inside the mortar. But, if such defect existed, it was not one which was apparent or discoverable upon inspection. Therefore, even if defendant should be charged with the duty of inspecting and examining the fireworks, such inspection would not have disclosed such defect in manufacture. All the cases cited hold that the defendant is only liable in case of negligence or failure to use reasonable care in regard to such matters as are known or should reasonably be known. Furthermore, defendant's officers were not experts. They could not be expected to know whether mortars should be constructed of steel, iron, or brass, or whether it was necessary to bury or bank the mortars in order to guard against danger of accident from defective construction of the bomb. The court, therefore, left to the jury the question of whether defendant exercised ordinary care in the selection of a competent and skillful person to manufacture and discharge said fireworks. The portion of the charge of the court excepted to was merely an application of its general charge that the defendant assumed the duty of using reasonable care to protect the plaintiff against injury, to the facts material to the case.

Plaintiff further excepted to the refusal of the court to charge as follows:

"If the jury finds that the place where the fireworks were set off was so small as to render it a dangerous one, they must find for the plaintiff."

The only testimony to support this request was that of Gerhardt's son, to the effect that the place was so narrow that it was not a safe

one to set off bombs of the character used that night. But it was immaterial what was the width of said place, provided, as the court charged the jury, the defendant "exercised proper precautions for the protection of the spectators by keeping them a reasonable distance from the place of discharge." Furthermore, when the attention of the court was called to said exception, the court further charged as follows:

"You will recall the testimony of the plaintiff that where the bomb was discharged was about 100 feet from where the plaintiff stood, and that there was an open space, according to the testimony of one of the Gerhardts, about 150 or 175 feet across, and, according to the testimony of some of the other witnesses, about 300 feet across. I leave the question with you as a question of fact whether the place in which they were set off, in view of the precautions which were taken to keep the audience a proper distance away, was reasonably safe."

No exception was taken to this charge.

The exceptions to the exclusion of the questions, on rebuttal, as to whether Gerhardt's employés were doing work on and furnishing the fireworks for Gerhardt or on their own responsibility, were not well taken, because the questions called for a conclusion of law. Moreover, they were not proper on rebuttal.

The plaintiff further excepted to the following remark addressed by the court to plaintiff's counsel during the trial:

"I do not doubt your good faith in the least, but it strikes me you are setting up a false issue in the case. There is enough in the case without injecting into it a false issue. It is perfectly apparent, from the young man's testimony, what the transaction really was."

In its charge the court, referring to the remark excepted to, said as follows:

"What are the facts? I made a remark during the examination of a witness, which perhaps I ought not to have made, that it seemed to me that the plaintiff was injecting a false issue into this case."

The court then fully stated the claims of plaintiff and defendant. We think that, in these circumstances, if there was originally any error prejudicial to plaintiff, it was corrected by said reference thereto and statement of said claims.

Plaintiff also excepted to the following expression of opinion in the charge of the court, referring to plaintiff's claim that defendant employed irresponsible and unskillful persons to discharge said fireworks. The portion of said charge in which such expression was used was as follows:

"I leave it to you to say whether the defendant employed a responsible and skillful person, or whether it employed an irresponsible and unskillful person. If the committee employed a couple of Italians about whom they knew nothing, they did not exercise the prudence which an intelligent man should have exercised. For myself, I do not believe for a moment that they did any such thing; but that is a question of fact for you to determine, and not for me."

In the federal courts an expression of opinion upon the facts is within the discretion of the judge. Baltimore & Potomac Railway Company v. Fifth Baptist Church, 137 U. S. 568, 574, 11 Sup. Ct. 185, 34 L. Ed. 784. "And it is so well settled, by a long series of de-

124 F.—2

cisions of this court, that the judge presiding at a trial, civil or criminal, in any court of the United States, is authorized, whenever he thinks it will assist the jury in arriving at a just conclusion, to express to them his opinion upon the questions of fact which he submits to their determination, that it is only necessary to refer to two or three recent cases in which the judge's opinion on matters of fact was quite as plainly and strongly expressed to the jury as in the case at bar. Vicksburg, etc., Railroad v. Putnam, 118 U. S. 545, 7 Sup. Ct. 1, 30 L. Ed. 257; United States v. Philadelphia & Reading Railroad, 123 U. S. 113, 8 Sup. Ct. 77, 31 L. Ed. 138; Lovejoy v. United States, 128 U. S. 171, 9 Sup. Ct. 57, 32 L. Ed. 389." Simmons v. United States, 142 U. S. 148, 155, 12 Sup. Ct. 171, 35 L. Ed. 968.

The judgment is affirmed, with costs.