### Odette M. Dire, Appellant, v. Balaban and Katz, Inc., Appellee.

### Gen. No. 30,716.

1. EXHIBITIONS AND SHOWS—*duty of proprietors in respect of safety of premises.* Proprietors of theaters are not insurers of the safety of their patrons, but are required to use only ordinary care to make the premises as reasonably safe as may be consistent with the practical operation of the business.

2. EXHIBITIONS AND SHOWS—*sufficiency of evidence to warrant direction of verdict in action for injury to theater patron by fall down stairway.* Evidence in an action for injury to a theater patron by falling down a stairway leading to a rest room, construed in the light most favorable to plaintiff, held as a matter of law not fairly to tend to prove any negligence on the part of the proprietor either in regard to the construction or maintenance of the stairway.

McSURELY, J., dissenting.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1925. Affirmed. Opinion filed June 14, 1926. Rehearing denied and opinion slightly modified July 2, 1926.

ALBERT BETTCHER and FOREST GARFIELD SMITH, for appellant.

GEORGE A. SCHNEIDER, STANLEY L. SHETLER and CASSELS, POTTER & BENTLEY, for appellee.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an action brought by Odette M. Dire, the plaintiff, against Balaban and Katz, a corporation, the defendant, to recover damages for personal injuries sustained by the plaintiff in a fall on a stairway in a theater controlled and operated by the defendant in Chicago, which stairway, it is alleged, the defendant negligently failed properly to construct and to maintain.

The case was tried before the court and a jury. At the close of the plaintiff's case the court peremptorily directed the jury to find the defendant not guilty. The court entered judgment on the verdict and the plaintiff appealed from the judgment.

The only question to be determined is whether the plaintiff's evidence, if taken as true and most favorably considered for her, fairly tends to prove the defendant guilty of negligence. If there is no evidence of negligence, or if there is but a scintilla of evidence, the jury should have been directed to return a verdict for the defendant. *Libby, McNeill & Libby v. Cook,* 222 Ill. 206, 213; *Kelly v. Chicago City R. Co.,* 283 Ill. 640, 642.

The evidence in regard to the question of negligence for the plaintiff consisted of the testimony of the plaintiff and her husband, Nicholas J. Dire.

The plaintiff testified on direct examination that on the evening of January 27, 1923, she and her husband attended the show at the theater of the defendant; that it was a "very slushy evening"; that they had seats on the main floor; that she had been to the theater many times before, but that this occasion was the first time she had ever had a seat on the main floor; that on previous occasions she had sat in the balcony; that after the performance, on the way out she suggested to her husband to inquire if there was a rest room down stairs; that he inquired of one of the ush-

ers, who directed them downstairs; that there is a landing at the foot of the first flight of the stairs; that she started down the stairs on the right-hand side, "right next to the railing," reached the landing, and "went off the landing there (indicating) with my right foot"; that she remembers "her right foot touching the first step," but that it "did not seem to get ahold on it"; that she "recalls striking the first step" on her "back side," and that then she "rolled down that one step to the floor"; that when she started to fall she "put out" her "right hand to grab the railing," but that "there was no railing there"; that at the time people were going up the stairs on her left; that she has been back to the theater to look at the stairway; that if you stand on the first step down, and put your hand out to guide yourself, it will touch the railing; that in stepping from the landing down to the first step if you put your hand out it will not reach the railing; that she believes the railing "only goes down to the middle of the second step, that it turns there to the side."

On cross-examination she testified that as she went down the stairway she was holding on the railing slightly; that she fell as she took the first step down from the landing; that her feet went down towards the foot of the stairway; that she does not know whether her feet went right straight down; that she knows that she went down, but does not know just how she went; that there were no people in front of her going down the stairway; that there were a number of people starting up the stairway.

Nicholas J. Dire, the husband of the plaintiff, testified on direct examination that they sat on the main floor of the theater for the first time; that "the stairway leading to the rest room is of slippery marble and not carpeted"; that the upper stairs leading to the seats are carpeted; that he and his wife went downstairs to the rest room directed by one of the attend-

ants, who called his attention to the stairway; that on this particular evening it was raining or snowing outside, sort of slush; that his wife was on his right and was close to the railing; that the accident occurred as his wife started to step from the landing; that she was about to step off with her right foot and suddenly she slipped from the landing to the first step, "at the first step here" (indicating); that "her foot suddenly gave way and as she went forward she endeavored to right herself by grasping for the railing and there was no railing there, and she went down"; that she fell to the bottom of the stairway (five steps); that her feet were on the lower floor and her head was up the stairway.

On cross-examination he testified that as his wife went down the stairway, "occasionally she would rest her hand" on the side railing and "then off as an ordinary person would"; that he had her left arm slightly; that as he got to the middle of the landing he released his hold on her; that he was not expecting her to fall; that he endeavored to protect her from falling by reaching out for the railing, but there was no railing there; that if there had been a railing there she would have broken her fall. This question was asked Dire: "As she stepped off this landing, will you just tell how she went down?" Dire answered: "Well, I don't recall it, so consequently I could not tell you how she went down. The only thing I know is she went down."

In addition to the description of the stairway that has been given a further description is as follows: At the landing on the side of the stairway there was a large pillar. A railing curves around the pillar but does not extend completely around it. The first step from the landing is about 6 inches wide at the pillar and about 8, 9 or 10 inches wide at about a foot and a half down from the pillar. The tread of

the steps overhangs the riser about 1½ inches. The overhanging part slants down and the face of the steps is a curve. A photograph of the stairway was introduced in evidence and appears in the record.

Counsel for the plaintiff contend that the proprietor of a theater is held to the same degree of care as is required of a common carrier of passengers; that is, the highest degree of care consistent with the practical operation of the business. We have not been referred to any decision of either the Supreme Court of Illinois or the Appellate Courts in which such a rule is announced. In the case of *O'Callaghan v. Dellwood Park Co.*, 242 Ill. 336, it was held that a company operating an amusement device known as a scenic railway was required to exercise the same degree of care to prevent injury to passengers as is imposed on common carriers of passengers. We do not think, however, that the analogy between a scenic railway and a common carrier of passengers fairly and reasonably could be extended to include theaters. Proprietors of business houses are held only to the exercise of reasonable and ordinary care in the maintenance and supervision of stairways on their premises. *Davis v. South Side Elevated R. Co.*, 292 Ill. 378, 384; *Pauckner v. Wakem*, 231 Ill. 276, 279.

The rule requiring the highest degree of care on the part of railroad companies for the protection of passengers does not apply to station buildings and other appurtenances of railroad companies. As to stations and other appurtenances, railroad companies are required to exercise only ordinary care to keep them in a reasonably safe condition. *Davis v. South Side Elevated R. Co., supra* (p. 382).

Although the question as to what degree of care is imposed on proprietors of theaters has not been decided in Illinois, the question has been determined in other jurisdictions. In our opinion, according to the weight of authority the correct rule is that pro-

prietors of theaters are not insurers of the safety of their patrons, but are required to use only ordinary care to make the premises as reasonably safe as may be consistent with the practical operation of the business. *Glynn v. Lyceum Theater Co.*, 87 Conn. 237, 241; *Hollenbaek v. Clemmer,* 66 Wash. 565, 566; *Andre v. Mertens,* 88 N. J. L. 626, 628; *Dalton v. Hooper,* — Tex. Civ. App. —, 168 S. W. 84, 85; *Valentine Co. v. Sloan,* 53 Ind. App. 69, 72; 26 R. C. L. sec. 15, p. 714; 21 Amer. & Eng. Encyc. of L., p. 472, 2nd ed.; 38 Cyc. of L. and P., pp. 268, 269. To the same effect are the following analogous cases: *Schofield v. Wood,* 170 Mass. 415, 418; *Fox v. Buffalo Park,* 21 App. Div. 321, 47 N. Y. Supp. 788, 792; *Williams v. The Mineral City Park Ass'n,* 128 Iowa 32, 37, 38; *Smith v. Cumberland County Agricultural Society,* 163 N. C. 346, 350; *Greene v. Seattle Athletic Club,* 60 Wash. 300, 303.

In the case at bar, taking the evidence as true and construing it most favorably for the plaintiff, we are of the opinion, as a matter of law, that the evidence does not fairly tend to prove that the defendant was negligent, either in regard to the construction or the maintenance of the stairway.

No expert testimony was introduced to show that the stairway was improperly or negligently constructed, and the testimony of the plaintiff and her husband relating to the construction of the stairway fairly and reasonably construed does not tend to prove that the stairway was improperly or negligently constructed. The only evidence that possibly could be considered as relevant to the question of negligent construction is that the steps consisted of "slippery marble"; that the railing extended only to the second step below the landing; that the landing at the pillar was about six inches in width; that the overhanging part of the steps curved down. In our view this evidence in itself alone is insufficient to show an improper or negligent construction of the stairway. We think

it may be said, as a matter of law, that this evidence reasonably and fairly construed does not tend to establish any obvious or apparent danger in the construction of the stairway. This conclusion is supported by the testimony of the plaintiff's husband. He testified that he was not expecting his wife to fall; that he had her left arm as they were descending the part of the stairway leading to the landing, but that he "released his hold on her" when they "got down to the middle, that is, of the landing." It is clear, therefore, that the husband did not see anything dangerous in regard to the construction of the stairway. Furthermore, neither the plaintiff nor her husband is able to tell just what caused the plaintiff to fall. Plaintiff testified as follows: "Well, I went off the landing there with my right foot. I do remember my right foot touching the first step, but it did not seem to get hold of it.  *  *  *  I went down. My foot went out and my body went backwards."

The testimony of the plaintiff's husband is as follows: "Q. As she stepped off this landing, well you just tell how she went down. A. Well, I don't recall it, so consequently I could not tell you how she went down. The only thing I know is, she went down." They both testified that she fell as she was stepping with her right foot off of the landing. They did not testify what there was about the landing that would have caused her to fall. They did not testify to any facts or circumstances which would justify the inference that she slipped and fell due to the fact that the composition of the stairway was "slippery marble," and reasonably we cannot indulge the presumption that she slipped and fell merely because the composition of the stairway was "slippery marble." Evidence showing a causal connection between the slippery marble and the fall would be necessary before such a presumption legitimately would be permissible and there are no such facts or circumstances in evi-

dence. On the contrary the evidence negatives the presumption that the fall was due to the "slippery marble." The plaintiff had descended the steps of the stairway leading to the landing, and if those steps had been slippery she would have observed that fact. Yet she did not testify that she experienced any difficulty in descending those steps. Furthermore, if she had fallen because of the slipperiness of the steps, undoubtedly she would have been aware of the fact. She would have known that she slipped. In considering the question whether it may be inferred that the fall was caused by the slipperiness of the steps, it must be borne in mind that it is not contended by the plaintiff that the steps were worn slippery. The declaration merely alleges that the stairway was constructed of "marble or stone," and the evidence tends to show that only the material of which the stairway was composed was slippery, and not that the slipperiness was due to wear. There is no evidence that the material of which the stairway was composed was not material customarily used in such construction.

In regard to the question whether the stairway was negligently maintained, we are of the opinion that the evidence does not fairly tend to establish any negligence. The evidence does not show any specific fact or circumstance from which reasonably it could be inferred that the stairway was negligently maintained. The evidence does not show that any of the steps were worn or had holes or depressions in them. The evidence does not show that anything that might have caused the accident was allowed to remain on the stairway. The evidence does not show that the stairway was not properly lighted. The only fact that has any relevancy whatever to the question whether the stairway was negligently maintained was that it was not carpeted. But in our opinion that fact alone would not make a prima facie case of negligence. As we view the evidence it does not show anything in re-

gard either to the construction or the maintenance of the stairway which would cause an ordinarily careful person to fall.

Counsel for the plaintiff attempt to supply the failure of the evidence to show any specific negligence by invoking the doctrine of *res ipsa loquitur.* We clearly are of the opinion that the maxim *res ipsa loquitur* does not apply. In the case of *Feldman v. Chicago Rys. Co.,* 289 Ill. 25, the court said (p. 35):

"The rule is that negligence is never presumed, but that the circumstances surrounding the case where the maxim of *res ipsa loquitur* applies, amount to evidence from which the facts of negligence may be found; that is, in a case within the maxim of *res ipsa loquitur,* the proof of the circumstances of such case and of the injury constitutes a *prima facie* case of negligence, and will justify a verdict unless such *prima facie* case is overcome by proof showing that the party charged is not at fault."

In the case at bar in our view "the proof of the circumstances of" the case and "of the injury" does not constitute "a *prima facie* case of negligence."

Counsel for the plaintiff have cited the following cases in support of their contention that the evidence is sufficient to show negligence on the part of the defendant: *Scott v. University of Michigan Athletic Ass'n,* 152 Mich. 684; *Schofield v. Wood, supra; Stair v. Kane,* 156 Fed. 100; *Weiner v. Scherer,* 64 Misc. 82, 117 N. Y. Supp. 1008; *Nephler v. Woodward,* 200 Mo. 179; *Bennett v. Jordan Marsh Co.,* 216 Mass. 550. We think that the cases are not in point; that the facts in all of the cases are materially different from the facts in the case at bar. In all of the cases there were facts from which specific negligence could be inferred. In the case of *Scott v. University of Michigan Athletic Ass'n, supra,* evidence showed that the accident was caused by the collapse of a stand or bleacher erected by the defendant. In the case of *Schofield v. Wood,*

*supra,* the accident was due to the falling of the guard-rail in front of the gallery in a public hall. In *Stair v. Kane, supra,* the accident was caused by the falling of a fire extinguisher which was kept on the sill of an open window at the side of a stairway leading to the gallery of a theater. In the case of *Weiner v. Scherer, supra,* the accident was caused by the falling of a balcony in a moving picture house. In the case of *Nephler v. Woodward, supra,* the accident was caused by a hole in the carpet on the floor of a theater. In the case of *Bennett v. Jordan Marsh Co., supra,* the accident was due to the negligence of a proprietor of a store in allowing the treads on a stairway in the store to wear smooth and to become rounded and slippery.

For the reasons stated the judgment of the trial court is affirmed.

*Affirmed.*

Matchett, P. J., concurs.
McSurely, J., dissents.