## J. W. SMITH v. CUMBERLAND COUNTY AGRICULTURAL SOCIETY.

(Filed 22 October, 1913.)

### 1. Theaters and Shows—Fairs—Danger—Warnings.

It is the duty of the managers of a fair upon whose premises a free balloon ascension is given as an attraction, to see that the premises are reasonably safe for the purpose, and they must use care and diligence to prevent injury, and by policemen or other guards warn the public against dangers that can reasonably be foreseen.

### 2. Same—"Free Attractions"—Trials—Evidence—Questions for Jury—Nonsuit.

In an action against a fair association to recover damages for mental anguish suffered by one who had paid the admission price, there was evidence tending to show that while the plaintiff was looking at the preparation for a balloon ascension, given as a "free attraction," he was requested by the one in charge to assist in holding the ropes attached to the balloon, and after doing so, and as he was leaving, having gone a few feet, the balloon suddenly ascended, and his foot having caught in a loop of one of the ropes attached, he was carried up with it. The evidence was conflicting as to whether the place was properly guarded or inclosed, or as to whether the crowd was warned of the danger in going there. Under the rule applicable as to how the evidence should be considered upon a motion to nonsuit, it is held that such motion was improperly allowed in this case, there being sufficient evidence to take the case to the jury upon the question of defendant's actionable negligence.

3. **Trials — Evidence—Nonsuit—Defenses—Independent Contractor —Contributory Negligence.**

In an action to recover damages arising from a personal injury alleged to have been negligently inflicted, neither the defense that the act complained of was that of an independent contractor nor evidence of contributory negligence will be considered upon a motion as of nonsuit upon the evidence. *Semble*, from the fact and circumstances of this case, the principal would be responsible, though it were established that the act complained of was that of an independent contractor while giving a balloon ascension as a "free attraction" at a county fair.

APPEAL by plaintiff from *Lyon, J.,* at August Term, 1913, of BLADEN.

*R. S. Hall and Shaw & MacLean, McIntyre, Lawrence & Proctor for plaintiff.*
*Rose & Rose for defendant.*

CLARK, C. J. This is an action for injuries sustained by the plaintiff, who was caught by his foot in the trail rope of a balloon which ascended from the fair grounds of defendant at Fayetteville, N. C., and was carried in the air for some distance. The appeal is from a nonsuit, and the testimony of the plaintiff, somewhat condensed, is as follows:

"The plaintiff, who is 53 years old, attended the fair held by the defendant at Fayetteville, and paid his fare for entrance. A balloon "free ascension" had been advertised as one of the attractions for that day, and he went over to the place where they were making arrangements for the balloon to ascend; he walked up to within fifteen or twenty steps of the balloon; there was some difficulty in launching it. It was swaying to and fro, though there was not much breeze. The man in charge, who was unknown to the plaintiff, called for help; he was trying to hold the balloon down until he could get it loaded. He said, "Everybody get a hold." The witness and several others went up and took hold; the witness held on for a few minutes, and then left and walked off eight or ten steps; this man then beckoned him back, and said, "Come back and hold this," and the witness went back and took hold, but only for a minute or two before he turned loose again, because the balloon seemed

uncontrollable, and he thought it best to leave. He had gotten only three or four steps, when some ropes caught him around his leg. He threw those ropes off with his hands and just at that time his left foot was caught by a noose in the rope around his instep; he had on a button slipper and the noose caught him around that and jerked his left foot up so quick that his head never struck the ground; the balloon went off like a rifle ball and he went with it. He was a couple of hundred yards in the air before he got righted up; he was hanging by his foot, head down and he was way up; he could not tell how far; he managed to get up somehow and got hold of the rope and climbed it, and when he got up some distance he managed to get his arm over something and held on with that arm and hand to the rope until the balloon came down. He could not tell how high the balloon went; he was sure a long way from the earth. He said he did not have language to explain his feelings; he said he thought he was gone, and that was the last of him; he imagines he felt like a man on the gallows with the black cap over his face to be hung. He could not say how long that state of feeling continued, but it was a long time; he thinks he was a couple of hundred yards in the air before he managed to raise up somehow and get hold of this rope and climb up it; he does not know how long he was about it; he recollects that he first got hold of his leg and tried to pull up, but his pants slipped and he fell back and his head again swung down; he managed to recover and somehow pulled up by his leg, and reached the rope and managed to get his right arm around it and held by that arm and his left hand to the rope until the balloon came down. When he managed to get his arm over the swing and to hold it there he looked down into space and was 1,500 or 1,600 feet from the ground. He went about 1½ miles, he thinks. When he came down he was still holding by his right arm and his left hand until he struck the ground. He then got the noose off his foot; the balloon rose again and went off, he does not know where, but supposes it must have come down again." The searching party in an automobile met him coming back bareheaded on a bicycle. The witness then stated at length the impairment of his physical and nervous system and his mental suffering, which of course were serious.

On cross-examination the witness says that "the balloon ascension took place in the race track; is not certain that there was a fence around it, but thinks there was; that he got inside of the race track by going through the gate; did not see any policeman; a crowd of people were going, and he went along with them. He does not recollect seeing any one telling the people to keep off; that he took hold and helped to hold the balloon, because the man in charge called for help, and that he went back the second time because after he started off the man in charge of the balloon said to him, "Come back and help hold this balloon." He says many other men were there helping to hold the balloon down. No one told him not to go into the inclosure and no one warned the crowd to get back from the balloon. If this was done, he did not hear it. He did not hear the man in charge of the exhibition make public outcry that the wind was blowing hard and it was dangerous, and for everybody to keep back; when he went to the race track he was not warned by any policeman or marshal or any one else to keep away after the gate was opened; that if he had not crossed the race track and had not gone near the balloon, he of course would not have been hurt; he says that a crowd of people were around the balloon within 15 or 20 feet, and he heard no warning given; that he did not know the balloon was going up then or that it was dangerous to be around where the ropes were."

There was evidence on the part of the defendant that the crowd broke down the fence and crowded around the balloon; that there was public warning given that it was dangerous to be there. There was also evidence tending to sustain the defense that the manager of the balloon was an independent contractor. We cannot consider this, as this is an appeal from a nonsuit, and the plaintiff did not offer evidence on this point, which, being an affirmative defense, was a matter for the jury. The defense that the defendant was not liable because it was a public-service company was properly abandoned in this Court. *Hallyburton v. Fair Association,* 119 N. C., 526.

Neither can we consider the evidence tending to show that the plaintiff was guilty of contributory negligence, nor to negative negligence on the part of the defendant. These matters in defense were for the jury to determine, not for the court.

Nothing is better settled than that on a nonsuit the Court will consider only the evidence most favorable to the plaintiff, and in the most favorable aspect to him, since the jury might have taken that view, and the plaintiff cannot be deprived of his right to ask a jury to find that his contention was the true state of the facts. The decisions to this effect are numerous and uniform. *Brewer v. Wynne, ante,* 319.

The rule of liability of fairs, shows, and theaters is summed up, 38 Cyc., 268, with full citation of authorities, as follows:

"The owner of a place of entertainment is charged with an affirmative, positive obligation to know that the premises are safe for the public use, and to furnish adequate appliances for the prevention of injuries which might be anticipated from the nature of the performance, and he impliedly warrants the premises to be reasonably safe for the purpose for which they are designed." He is not an insurer of the safety of those attending the exhibition, but he must use care and diligence to prevent injury, and by policemen or other guards warn the public against dangers that can reasonably be foreseen. While the defense of "independent contractor" is not before us upon a nonsuit, we may call attention to the fact that the same citation cites *Thompson v. R. R.,* 170 Mass., 577; 64 Am. St., 323; 40 L. R. A., 345, for the proposition that the owner "is not exonerated because the exhibition where the injury was received was provided and conducted by an independent contractor." Nor do we now pass upon the question whether the manager of the balloon was an independent contractor.

Taking the evidence in the aspect most favorable to the plaintiff, and with the inferences which a jury would be authorized to draw therefrom, they would have been justified in finding a verdict in favor of the plaintiff, and that the defendant was guilty of negligence. The matters of defense could not be considered by the judge on a motion for nonsuit. The nonsuit is

Reversed.