Engstrom, Appellant, *v.* Huntley et al.

Argued May 12, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Robert M. Dale,* with him *F. Joseph Thomas,* for appellant.

*Paul E. Thomas,* for appellee.

OPINION BY MR. JUSTICE LINN, May 25, 1942:

Plaintiff was injured by the negligent operation of an amusement device called Tilt-a-Whirl in the amusement park known as Conneaut Lake Park, which was owned and operated by the Hotel Conneaut, Inc., defendant-appellee. She sued the corporation, Charles Huntley and C. D. Clark, and put in evidence sufficient to support a finding that her injury resulted from negligent operation. The defendants elected to put in no evidence. The jury rendered a verdict for the plaintiff against all three defendants. The appellee moved for judgment n. o. v. for lack of evidence against it. The motion was granted and plaintiff appealed. The question is whether there was evidence to go to the jury to support a finding that appellee failed to exercise that measure of care to an invitee required of an invitor.

The park contains 976 acres, and was owned and operated by appellee, a fact admitted in its affidavit of defense and by Mr. Foley, its Vice-President, called for cross-examination. He testified the defendant operated Conneaut Hotel in the park, and a number of so-called amusements, specifying among them, the Beach Club, a restaurant and floor show for patrons, bath houses, boat houses, bowling alleys, a golf course, a dance hall. It

frequently maintained "an office in the Park where people may go who are interested in purchasing tickets permitting them to ride on concessions and all devices at the park, . . ." It maintained a park police force. It extensively advertised its park and amusement facilities as "Western Pennsylvania's Favorite Playground." The record contains more evidence to the same effect, but that is sufficient to give some idea of the place. Appellee's invitation to the public was clearly shown.

The plaintiff testified that on July 20, 1938, while in the park, she went to this Tilt-a-Whirl and "paid the man a quarter for the ride for the little boy and myself." He put the device in motion, and, as the jury may have found, his inattention to duty with respect to its operation resulted in injury to plaintiff. Afterward, she made inquiry of Mr. Huntley, one of the defendants, who informed her "that he was supposed to be operating this device," but on that day "had gone to Ohio on business and left the young attendant to work the device while they were gone." She also testified that she communicated with Mr. Foley, appellee's Vice-President, who "referred" her to Mr. Clark, also a defendant. The evidence that has been printed does not clearly show the respective interests in the Tilt-a-Whirl of Huntley, Clark, or the appellee, and their relation to each other. As appellee's operation of the park has been admitted, it is immaterial, for present purposes, that plaintiff has not shown the precise nature of the arrangement between the defendants; if material to the appellee's defense, appellee would doubtless have put in evidence on the point.

The important fact is that the Tilt-a-Whirl was operated in the park owned and operated by the appellee, who invited the public to become patrons of the amusement devices. Having invited them, appellee was required to exercise the measure of care owing to invitees. In *Haugh v. Harris Brothers Amusement Co.*, 315 Pa. 90, 92, 172 A. 145, we said, "It is settled that one main-

taining a theater, or similar place of amusement for which admission is charged, is not an insurer, but must use reasonable care in the construction, maintenance and management of it, having regard to the character of the exhibitions given and the customary conduct of patrons invited."

The applicable rule is stated in section 344 of the Restatement of Torts: "A possessor of land who holds it open to the entry of the public for his business purposes is subject to liability to members of the public entering for such purposes for bodily harm caused to them by his failure to exercise a reasonably careful supervision of the appliances or methods of an independent contractor or concessionnaire whom he has employed or permitted to carry on upon the land an activity which is directly or indirectly connected with his business use thereof."

Section 415 states: "A possessor of land who in the course of his business holds it open to members of the public, is subject to liability for bodily harm caused to them, on a part of the land retained in his possession or upon a part thereof leased to a concessionnaire, by his failure to exercise reasonable care to secure the use of reasonably safe equipment and methods by an . . . (b) independent contractor or concessionnaire employed or permitted to carry on upon the land an activity in furtherance of the possessor's business use thereof."

Such amusement park situations have been the subject of discussion in many jurisdictions.* In *Frear v. Manchester Traction, Light and Power Co.*, 83 N. H. 64, 139 A. 86, the plaintiff was injured on a Ferris Wheel in an amusement park operated by a street railway company. The Ferris Wheel was owned and managed by a concessionnaire, Williams, who paid part of the proceeds to the railway. The railway advertised the park

---

* See, for example, annotations on this point in 29 A. L. R. 736, 53 A. L. R. 355, 61 A. L. R. 1289, and 98 A. L. R. 557.

and its amusements. The street railway company was held liable for plaintiff's injuries. PEASLEE, C. J., said: "The railway invited the plaintiff, as one of the public, to the park. 'The liability in such a case should be co-extensive with the inducement or implied invitation.' *Plummer v. Dill*, 156 Mass. 426, 430, 31 N. E. 128, 130. . . . This structure was within the railway's park. In such a situation the public would be justified in assuming that the railway invited them to take the ride upon its premises. The railway is chargeable with knowledge of this reasonable attitude of the public, and hence arose the duty to use due care to see that the wheel was safe." He also said: "Surrender of control of the premises to Williams did not free the railway from responsibility. The issue is not one of a landlord's liability to his tenants' guests, but of his duty to his own invitees. The doctrine of nonliability for the negligence of an independent contractor, or a lessee, does not control the rights and duties of these parties. A duty was imposed, not because the railway was liable generally for faulty construction or negligent operation, but because its acts made it a sponsor for the enterprise. The invitation was such an adoption of the place invited to that the duty to use care arose."

In *Turgeon v. Connecticut Co.*, 84 Conn. 538, 541, 80 A. 714, a railway operating an amusement park was charged with liability for the injuries of an invitee while riding upon a miniature train operated by a concessionnaire. The court said: "It was the defendant's place of amusement; it was its invitation which brought the plaintiff there; and it retained, despite its concessionnaires, a general supervision and care of the property." In *Wodnick v. Luna Park Amusement Co.*, 69 Wash. 638, 640, 125 Pac. 941, 942, the persons constituting the amusement company were "the owners, managers, and operators of Luna Park" and it was held that by their advertisements of the park they made an "implied representation that the instrumentalities for amusement

which they advertised were reasonably safe." In *Steckel v. Riverview Sharpshooters' Park Co.*, 250 Ill. 452, 95 N. E. 445, it was said: "but in amusement places where space is granted for conducting attractions for the amusement of the public, and for which an admission fee is charged by the concessioner and divided with the owner, there is unanimity of authority that the owner assumes an obligation that the devices and attractions operated by the concessioners are reasonably safe for the purpose for which the public is invited to use them, . . . and this duty applies not to construction alone, but to management and operation, where the device is of a character likely to produce injury unless due care is observed in its operation."

Plaintiff's evidence was therefore sufficient to go to the jury, and to cast upon appellee the burden of proving that it exercised the degree of care required in the circumstances.

The judgment is reversed; the record is remitted with instructions to enter judgment against Hotel Conneaut, Inc., on the verdict in favor of the plaintiff.