HARRIET E. COVEY, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 30086.)

Court of Claims, July 10, 1951.

*Daniel F. Mathews* for claimant.

*Nathaniel L. Goldstein, Attorney-General (George S. Sullivan* of counsel), for defendant.

GORMAN, J.  On the afternoon of Tuesday, September 6, 1949, the claimant, Harriet E. Covey, was present on the grounds of the New York State Fair, having purchased an admission ticket. Mrs. Covey, who was employed at Shure's Restaurant, located on the fairgrounds, was spending a brief rest period inspecting the amusement attractions on the midway.

Claimant and her companion, having completed a bingo game, strolled toward a scooter ride which was one of the first attractions. This amusement device consisted of a steel table, approximately seventy-five feet in diameter, which supported electrically propelled cars. The floor of this structure was about even in height with the claimant's shoulders. Two ramps, each approximately eighteen feet long, extended from the ground to either side of a six-foot square platform to provide ingress and egress for passengers. On the edge of this platform, on which patrons waited for a vacant car, and facing the public way, was a heavy wood and steel gate, about six feet long and about three feet high.

The claimant was standing in front of the platform, near a ticket office, watching the random maneuvering of the scooters. At the precise time of the accident, the scooter cars were not in operation but some forty children were mounting the ramp and getting into the scooters. Suddenly the above-described gate fell outward from the platform, hitting claimant and knocking her down, painfully injuring her left leg. She was helped to her feet by one of the attendants of the scooter ride and another young man in uniform, apparently a roustabout, and taken to a first-aid station on the midway. She was then transported in a car to the hospital on the State Fairgrounds and treated by Dr. Harry L. Gilmore, the physician in charge of the hospital during the 1949 fair.

Claimant has evoked the doctrine of *res ipsa loquitur* and relies upon that theory to sustain her claim. The State rested at the close of the claimant's case without offering any proof, and moved for a nonsuit and a dismissal of the claim on the ground that the claimant had failed to make out a cause of action against the State of New York.

The tract of land located in Onondaga County and known as the State Fairground is owned by the State of New York, and the State Fair held annually on these grounds for educational purposes and profit, is under the control and management of the Department of Agriculture and Markets acting through the Division of the State Fair. (Agriculture and Markets Law, § 31.) The same law (§ 31-c) provides for the receipt and distribution by the department of all moneys received, including gate admissions, race receipts and other income.

The doctrine of *res ipsa loquitur* is operative when the agency causing the injury is under the control or management of the one charged with negligence, and the circumstances are such that the accident would probably not have occurred if reasonable diligence had been exercised. (*Foltis, Inc.,* v. *City of New York,* 287 N. Y. 108; *Neuhoff* v. *Retlaw Realty Corp.,* 289 N. Y. 293; *Galbraith* v. *Busch,* 267 N. Y. 230; *Slater* v. *Barnes,* 241 N. Y. 284.) "It is not necessary for the applicability of the *res ipsa loquitur* doctrine that there be but a single person in control of that which caused the damage." (*Schroeder* v. *City & Co. Sav. Bank,* 293 N. Y. 370, 374.)

The obligation of those who collect numbers of people in one place, for gain or profit, to be vigilant in their efforts to protect such people, has long been recognized. (*Schubart* v. *Hotel Astor,* 168 Misc. 431, affd. 255 App. Div. 1012, affd. 281 N. Y. 597; *Tan-*

*tillo* v. *Goldstein Bros. Amusement Co.,* 248 N. Y. 286, 290; *Arnold* v. *State of New York,* 163 App. Div. 253; *Platt* v. *Erie Co. Agric. Soc.,* 164 App. Div. 99.) When one in possession of premises opens them to the public for purposes of gain, he impliedly warrants such premises to be reasonably safe for the purposes for which they were designed. (*Fox* v. *Buffalo Park,* 21 App. Div. 321, affd. 163 N. Y. 559; *Schnizer* v. *Phillips,* 108 App. Div. 17; *Redmond* v. *National Horse Show Assn.,* 78 Misc. 383.) A duty therefore devolved upon the State of New York to keep the fairgrounds to which it solicited the patronage of the general public in a reasonably safe condition for their intended use. This was a duty which could not be delegated. (*Sciolaro* v. *Asch,* 198 N. Y. 77, 82; *Besner* v. *Central Trust Co.,* 230 N. Y. 357, 363; *Wright* v. *Tudor City Twelfth Unit,* 276 N. Y. 303, 308; *Katapodis* v. *La Salle Trucking Corp.,* 293 N. Y. 229.)

The claim and record of the present case seem to indicate that the scooter ride may have been operated at the time of the accident by a lessee or independent contractor. A considerable body of law has grown up in connection with the problem of liability or negligence evolving from the operation of amusement devices. Prevailing opinion predicates liability for the negligence of a concessionaire who furnishes attractions, upon the fair association or amusement park owner who charges a general fee for admission to the grounds. (See *Wodnik* v. *Luna Park Amusement Co.,* 69 Wash. 638; *Hartman* v. *Tennessee State Fair Assn.,* 134 Tenn. 149; *Gentry* v. *Taylor,* 182 Tenn. 223; *Engstrom* v. *Huntley,* 345 Pa. 10; *Eide* v. *Skerbeck,* 242 Wis. 474, and Restatement, Torts, § 415.)

The State was the owner and in possession of the premises. It had caused the erection and location of this attraction and was financially interested in the use to which the land was devoted. Such use was clearly within the realm of its observation and control. The collapse of the structure gate was prima facie evidence of negligence. (*Mullen* v. *St. John,* 57 N. Y. 567.) There were no special circumstances of storm or violence shown. In the performance of its duty of ordinary care, the State was required to reasonably inspect and supervise the amusement devices located on the midway to see that they had been properly assembled and were in a reasonably safe condition for their intended use. (*Dittiger* v. *Isal Realty Corp.,* 290 N. Y. 492, 496; *Lusk* v. *Peck,* 132 App. Div. 426, affd. 199 N. Y. 546.) The New York State Fair opened on September 5, 1949, and ran to September 10, 1949. The accident in question happened in the

afternoon of the second day and a sufficient period of time had elapsed to give the State a reasonable opportunity to properly protect its invitees. Under the circumstances, the State and any concessionaire, either simultaneously or in necessary rotation, with nondelegable supervision always remaining in the State, were in possession of the instrumentality which caused the injuries to claimant. (*Schroeder* v. *City & Co. Sav. Bank,* 293 N. Y. 370, 374, *supra.*) If the State would shift the incidence of its duty, and the liability for nonperformance, to the shoulders of another, the least it should do is prove the terms of the new contract, the extent of delegation. "Till then, it is still the *entrepreneur,* the master of the enterprise." (*Hooey* v. *Airport Constr. Co.,* 253 N. Y. 486, 489.) Escape from responsibility through the delegation of duty to another is a defense to be proved, not a privilege presumed.

At the time of the accident, claimant was where she had a right to be. There was nothing to warn her that any dangerous condition threatened her safety. No action of hers in any way contributed to the falling of the gate and she was guilty of no negligence which caused or contributed to her injuries. Under the circumstances, the State was put to the necessity of coming forward with an explanation of the accident so as to overcome the implications resulting from claimant's proof. This it failed to do, and the absence of any excuse or explanation warrants the inference of lack of reasonable care.

Claimant suffered a sprained wrist and painful injuries to her left leg. She was incapacitated for about six weeks and resultant complications have interfered with her usual type of work.

Claimant is entitled to an award against the State of New York in the sum of $1,000.

The foregoing constitutes the written and signed decision upon which judgment may be entered and it is therefore unnecessary to pass upon the proposed findings of fact and conclusions of law (Civ. Prac. Act, § 440).