JOHN SERBALIK, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31053.)

JOHN SERBALIK, JR., by JOHN SERBALIK, His Guardian ad Litem, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31054.)

LEONA SERBALIK, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31055.)

Court of Claims, July 23, 1953.

*Vincent P. Pickett* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Joseph A. Drago* of counsel), for defendant.

MAJOR, J. The above claims are for damages sustained by the respective parties as a result of an accident at Hearthstone State Park, a public campsite at Lake George, New York, which is owned and operated by the State of New York through its Conservation Department. The claimants had secured a permit to occupy one of the camps in this park, a short distance from which the State maintains a series of swing units. There are three swings in each unit. The swings, amusement devices, are suspended from a horizontal bar, of two and one-half inch iron pipe, which is supported at each end on a bipod. The seat of the swing is a board approximately eighteen inches long, six inches to eight inches wide, and when in a stationary position, it is about two and one-half feet from the ground. Each end of the seat is attached to a chain consisting of eight links, made of three-eighths inch metal rod and each link about ten inches long. Each end of the link is bent so as to form a circular eyelet, almost, but not quite, closed. In the case of the bottom link, the bottom hook passes through an eye of a bolt fastened to the seat plank, while the eyelet on the upper end of that link passes through the bottom eyelet of the link next above, and continuing likewise until the top link is reached. The eyelet at the top end of the top link passes through another eye which may be compared to the bottom half of an arabic eight. The upper half of the " eight " fits in between two eyes protruding from the bottom of a clamp, which is rigidly fixed to the main cross-bar and is held in position by a bolt which passes through the three eyes. The upper eye of the " eight " with the bolt is referred to as the " swivel ".

On August 7, 1951, the claimants, together with Judy Serbalik, another infant child of John and Leona Serbalik, were using the swing units. Leona Serbalik, with her son, John, Jr., on her lap, was using the most westerly swing in the swing unit. Her husband, John Serbalik, holding Judy Serbalik, his daughter, on his lap, was using the most easterly swing in such swing unit. Leona Serbalik weighed about 130 pounds, and her son, John, Jr., weighed 28 to 30 pounds, while John Serbalik (Sr.) weighed about 145 pounds, and his daughter about 28 to 30 pounds.

While Leona Serbalik and her son, John, Jr., were swinging, the top eyelet on the right chain of the swing which connects with the swivel, gave way, freeing such chain to fall. It was conceded by both parties that such eyelet, after the accident, was found to have opened up. The severance of such chain caused the right side of the swing seat to fall free, thereby precipitating the claimants, Leona Sherbalik, and her son, John, Jr., to the ground. The claims allege negligence on the part of the State in the construction, operation and maintenance of the swing.

The evidence shows that the opening up of the eyelet, also referred to as the " hook ", was the cause of this accident and the resulting damages. There was no evidence offered as to the reason for the opening of the eyelet, which was made of iron or steel. There is no evidence as to whether the hook opened up instantaneously at the time of the accident, or whether it had been a gradual process. The swing, which had been in use for about twenty years, was under the sole control and custody of the State of New York, through its Conservation Department, which, in turn, operated the campsite and equipment by various employees. The caretaker in charge testified on this trial that, aside from casual observation of the swings by employees when in the vicinity thereof, there had been no inspection of the swing since its installation in May, 1951, about two and one-half months prior to the accident, although the swings were in frequent use by great numbers of people. The park was visited by 63,789 persons in 1948; 60,278 in 1949; 44,053 in 1950 and 52,281 in 1951. The swings were used by adults and children, and at times by two persons swinging together, sometimes standing up. There were no signs, warnings or restrictions posted pertaining to such swings or their use.

At the time the swings were installed, grease was put on the swivel, but not on the eyelet which opened up. After the accident, the eyelet was said to have been worn from one thirty-

second to one sixteenth of an inch. No tests were made at any time by the State of New York to determine the weight which the swing would hold, and nothing further was done to the swings by the State up to the time of the accident. After the accident, the broken swing was removed, at which time the State employees observed that the eyelet was worn and straightened out. The swing was not produced at the trial.

Claimants' Exhibit No. 7 is a permit by the State to occupy campsite number six, thereby reserving to them that particular camp, so that John Serbalik (Sr.), his family and guests, might have sole occupancy thereof during the period specified. This did not include similar use of the swings or other parts of the park. Claimants used the swings as invitees on an implied invitation. The State is not an insurer of the safety of those coming to its public parks and campsites, even though they are invitees. It is required to use reasonable care to prevent injury and to keep the premises and equipment in a reasonably safe condition; and, to some extent at least, this duty depends upon the degree of danger reasonably to be apprehended. (3 Warren on Negligence in the New York Courts, p. 60; *Clark* v. *City of Buffalo*, 288 N. Y. 62.)

It was the duty of the State to keep this campsite and its amusement apparatus, including the swings, in a reasonably safe condition for the intended use. The circumstances under which this swing broke established prima facie eivdence of negligence. (*Mullen* v. *St. John*, 57 N. Y. 567; *Covey* v. *State of New York*, 200 Misc. 340; *Platt* v. *Erie Co. Agric. Soc.*, 164 App. Div. 99, 101; *Reinzi* v. *Tilyou*, 252 N. Y. 97; *Goldstein* v. *Pullman Co.*, 220 N. Y. 549, 554.)

The doctrine of *res ipsa loquitur* is operative when a thing which caused the injury without fault of the injured person is shown to be within the exclusive custody and control of the defendant, and the accident is such as in the ordinary course of events would not occur, if the one having control used proper care. It affords reasonable evidence, in the absence of an explanation, that the injury arose from defendant's want of care. The doctrine, however, does not permit a recovery without some proof of negligence, but it regulates the degree of proof required under certain circumstances. It is applied when the inference of negligence is required by the nature of the occurrence. It is, however, an essential element that the accident be one that would ordinarily not occur were proper care used. (*Robinson* v. *Consolidated Gas Co.*, 194 N. Y. 37; *Griffen* v. *Manice*, 166 N. Y. 188; *Whitcher* v. *Board of Educ. of City of*

*Rensselaer*, 236 App. Div. 293; 1 Warren on Negligence in the New York Courts, pp. 103, 105.)

The use of the swing very often becomes a hazardous form of amusement, and when not in proper repair or properly operated can cause great damage and suffering. This fact is common knowledge to all, at least of mature age. Considering the amount of usage given these swings, ordinary prudence dictates that more maintenance was necessary than to put up the twenty-year-old swings in the spring and take them down in the fall. Defendant is chargeable with notice of its condition, and failed to offer an explanation as to the cause of the defect in the eyelet or hook, to overcome the case made out by claimants. (*Reinzi* v. *Tilyou, supra*; *Dittiger* v. *Isal Realty Corp.*, 290 N. Y. 492.)

There was no evidence of improper use or misuse of this swing by the claimants. It is customary for parents to hold children on their laps while swinging. There were no rules or regulations against it, or signs prohibiting it. The combined weight of mother and child was not excessive. Both the claimants and the State employees had seen these swings similarly used before the accident. The swinging of these two persons in the same swing with the child on the mother's lap was not the proximate cause of the accident, and did not contribute to it. We find none of said claimants were guilty of contributory negligence.

In the performance of its duty of ordinary care, the State was required to inspect, properly maintain and supervise the swings. The State made no inspection after putting up the swings, except casual observation by employees when passing by. This was not sufficient, and we find the negligence of the State to be the proximate cause of the accident and resulting damages.

The State's motions at the opening of the trial, at the close of claimants' cases and at the end of the trial, upon which decisions were reserved, are denied.

The court finds that, because of the negligence of the State of New York, the claimant Leona Serbalik is entitled to recover from the State of New York, the sum of $900 for pain, suffering and injuries; that the claimant, John Serbalik, is entitled to recover the sum of $200 to cover his damages and disbursements; and that the claimant, John Serbalik, Jr., by John Serbalik, his guardian ad litem, is entitled to recover the sum of $700 for his pain, suffering and injuries.

The foregoing constitutes the written and signed decision upon which judgments may be entered, pursuant to section 440 of the Civil Practice Act.