[No. 32576.   Department One.   November 24, 1953.]

EVELYN TUGGLE, *as Guardian ad Litem for Judith Tuggle, a Minor, Appellant,* v. K. R. ANDERSON *et al., Respondents.*[1]

*Homer B. Splawn* and *Robert I. Bounds,* for appellant.

*Gavin, Robinson & Kendrick,* for respondents.

MALLERY, J.—This action was brought by Evelyn Tuggle, as guardian *ad litem* for her two-and-one-half-year-old

[1]Reported in 263 P. (2d) 822.

daughter, against K. R. Anderson and W. E. Vannerson, doing business as Ziegler Shows, for personal injuries suffered on June 5, 1950, while on a "kiddie ride" at defendants' carnival at Yakima. The jury found for the defendants, and the plaintiff appeals.

The "kiddie ride" consisted of a circular wooden platform on which approximately ten tiny auto cars revolved six or seven times a minute. Each car was propelled by a metal bar connected to a central pivot turned by an electric motor.

Appellant purchased a ticket for the "kiddie ride" and placed her daughter in one of the cars. After it had started, the child somehow got out or fell out of the car onto the platform, and was struck by the connecting bars as they came around. She was finally rolled under two or three cars for approximately two revolutions of the "kiddie ride." The operator had walked away from the "kiddie ride" so that he was not available to stop it. The child's grandmother ran to the electric button to the motor and stopped it in less than the distance between two cars.

The jury could have found, under the conflicting evidence, that the injury to the child was the result of negligence on the part of the attendant in leaving the "kiddie ride" unattended or that the accident was unavoidable.

The "kiddie ride" was owned by Everett Butler, a concessionaire of respondents, who installed and operated it as a component part of their carnival for seventy per cent of its gross receipts.

The respondents had nothing to do with the actual operation of the "kiddie ride." They did make rules and regulations for their concessionaires, and had the right to require a correction of anything wrong with the equipment used or its mode of operation, or to remove it entirely from the carnival. The "kiddie ride" itself was not defective. There was nothing about Butler's past conduct from which respondents had notice that he was an unsuitable operator.

In support of the judgment, the respondents contend that, while they might be liable for defective carnival equipment, they are not liable for the casual acts or omissions of an *independent contractor* in the operation of his equipment,

in the absence of proof that they knew or should have known of his negligent operation. They say:

"There is no reason why the general rule of nonliability for the casual acts of omission of independent contractors should be denied to carnival operations as such. The excuse proposed by the appellant for making an exception to the rule is that the carnival operators hold the carnival out to the public for its use and amusement and that they should be held responsible for injuries sustained by the public. . . . Particularly, why should the operator be held liable when he could not have adequately guarded against such temporary lapse as is alleged to have occurred in the conduct of the employee of the concessionaire?"

Respondents beg the question in designating Butler as an independent contractor. Of course they would not be liable if he were such. In *Poutre v. Saunders*, 19 Wn. (2d) 561, 143 P. (2d) 554, we said:

"We have never departed from the basic law of agency that only he who controls or has the right to control shall be liable."

Respondents' right to control the concessionaire's conduct is not denied. Such a right characterizes their relationship as an agency, and negatives the possibility of it being that of independent contractor. The respondents' liability is predicated upon the doctrine of *respondeat superior*, which is not dependent upon the effectiveness or practicability of control, but only upon the existence of the right. This is because of the doctrine of imputed negligence. *Qui facit per alium facit per se*. We are not concerned with the personal innocence of the respondents, but only with the acts of their agent. The existence of an agency is, therefore, the crux of respondents' liability.

We held that the concessionaire was an agent in *Wodnik v. Luna Park Amusement Co.*, 69 Wash. 638, 125 Pac. 941, where the showman was held liable for the unsafe condition of an agent's mallet. We said:

"There was an implied representation that the instrumentalities for amusement which they advertised were reasonably safe. The fact that the amusement was furnished by a third party under an independent contract with

the appellants in no manner relieved them from the duty to see that the appliances were reasonably safe for the use intended. The duty of exercising reasonable care for the safety of their patrons while engaged in the performance of the very purpose for which they were invited cannot be avoided in any such way. . . . We think that, as between the respondent and the appellants the owner and operator of the striking machine must logically be held the appellants' agent."

██ Accordingly, the trial court did not err in submitting the case to the jury upon the theory that, if the "kiddie ride" was such a device as was likely to produce injury to children of tender years *unless due care was used in its operation,* and if it was left unattended or without immediate supervision or control by the concessionaire, and if such conduct was negligence under the trial court's definition of negligence, and was the proximate cause of the injury, then respondents would be liable irrespective of the fact that they did not personally own and operate the "kiddie ride" themselves.

The trial court derived its theory of liability from *Stickel v. Riverview Sharpshooters Park Co.*, 250 Ill. 452, 95 N. E. 445, where the rule was announced:

"While there are some decisions to the contrary, the greater weight of authority is that the owner will not be relieved from responsibility because the exhibition is provided and conducted by the concessioner, provided it is of a character that would probably cause injury unless due precautions are taken to guard against it; and this duty applies not to *construction* alone, but to management and *operation* where the device is of a character likely to produce injury unless due care is observed in its operation." (Italics ours.)

See, also, *Whyte v. Idora Park Co.*, 29 Cal. App. 342, 155 Pac. 1018, and *Wodnik v. Luna Park Amusement Co., supra.* The rule is discussed in 145 A. L. R. 976, 977.

The *Wodnik* case, *supra,* recognizes a showman's liability for defective equipment used by a concessionaire. The doctrine of *respondeat superior* sustains liability for everything within the scope and course of the agency. Liability is uni-

versally predicated upon the conduct of an agent. It was the liability for defects in the *agent's* equipment that called for special treatment in the *Wodnik* and other cases, *supra*. We, therefore, cannot agree with the distinction the respondents seek to make between liability for an agent's defective equipment and liability for negligent conduct of an agent.

Appellant assigns error to the giving of instruction No. 10, which told the jury that to recover the appellant must prove that the *respondents* were negligent. No reference to imputed negligence is made therein or elsewhere in the instructions. This omission makes instruction No. 10 tantamount to an instruction for a directed verdict for the respondents, because appellant relied solely upon the imputed negligence of concessionaire Butler in walking away from the "kiddie ride" while in motion. It was reversible error.

The judgment is reversed, and the cause remanded for a new trial.

GRADY, C. J., HILL, WEAVER, and OLSON, JJ., concur.