## (May 8, 1957)

■ THOMAS NESSINGER, an Infant, by MELVIN NESSINGER, His Guardian ad Litem, Respondent, v. ONTARIO COUNTY AGRICULTURAL SOCIETY et al., Appellants. MELVIN NESSINGER, Respondent, v. ONTARIO COUNTY AGRICULTURAL SOCIETY et al., Appellants.

Appeals from judgments of the Supreme Court in favor of plaintiffs, entered December 14, 1955, in Ontario County, upon verdicts rendered at a Trial Term. Appeals by defendants Ontario County Agricultural Society and Geneva Awning & Tent Co. from an order of said court, entered December 14, 1955, which (1) denied motions by defendants for orders setting aside the verdicts and dismissing the complaints and (2) denied a motion by defendant Ontario

County Agricultural Society for an order dismissing the complaints for failure to comply with section 50-e of the General Municipal Law.

MEMORANDUM BY THE COURT. The infant plaintiff was injured while attending a county fair of the defendant Ontario County Agricultural Society. He was struck on the back of the head by some object the nature of which was not clear, causing serious and permanent injuries. In any event, the accident was the result of a phenomenal, unusual and sudden windstorm of great velocity and severity, and not as the result of negligence of any of the defendants. The storm caused serious damage to a portion of the small area used for the fair. There is nothing in the record to show substantial damage anywhere outside of the fair area. The high velocity of the wind and its turbulence commenced suddenly and without warning, continued for a brief period and subsided quickly. It was a freak storm which could not have been anticipated, foreseen, or guarded against in the exercise of reasonable care and caution. Any lack of diligence or care that there may have been on the part of any defendant was not the proximate cause of the injury, which resulted solely from this abnormal, unexpected and highly unusual occurrence. The complaint should be dismissed on the merits.

GOLDMAN, J. (dissenting). I cannot agree that the evidence conclusively showed that the damage was caused by a wind so phenomenal and unusual that, as a matter of law, defendants' negligence and lack of foresight played no part in causing the plaintiff's injuries.

There appears to be ample evidence from which the jury could reasonably have concluded that plaintiff's injuries did not result solely from an act of God. There was testimony from which the jury could have found that if defendants had consulted weather authorities, and particularly a barometer, the approach and magnitude of the storm could have been known from 30 to 60 minutes prior to the time it broke, adequate time in which to have warned the patrons over the loud speaker, to have taken precautions such as clearing the tents and to have made special efforts in other ways to withstand the storm; that this was not a sudden wind which came without warning, but one which was gusty and shifting and increased in velocity over a period of 20 minutes; that the storm at its maximum had a velocity of 50 knots per hour which was a moderate gale, and not a rare inland phenomenon; that at least 15 minutes before the storm, dark clouds were observed and the sky became overcast and very dark; that at least 10 to 15 minutes before the first tent went down a tent was seen to rise and fall 2 feet from the ballooning effect of the wind; that in another tent the poles rose from the ground with the gusts of wind; that there was an inadequate force of defendant company's employees to maintain and supervise the tents, there being only two men on the grounds to care for 38 tents; that neither of these men was experienced in high winds and were told only to use their own judgment in the matter of lowering tents; that the proper technique in lowering tents would have been to remove the center pole, which would have required two or three men for each tent; that the defendants were negligent in placing the center pole of the Heckerman tent through an exhibit weighing 2,000 pounds, which would have impeded and obstructed the lowering of that tent; that in one tent 10 minutes before the first tent went down the side walls were lowered and volunteers held the tent up until the storm ceased; that side walls of the tent in question were in the tent headquarters and not attached as they should have been; that, as an expert on wind stress categorically stated, if side walls had been lowered on the tent in question it would have withstood the wind for 20 minutes. In addition to the testimony referred to above, I believe there were other facts in the record which were properly submitted to the jury.

The defendants Agricultural Society and Geneva Tent Co. had 43 years of experience with this particular fair. The public had been invited to attend the fair for the purpose of economic gain for all three defendants. Under such circumstances, they had a duty to be diligent in apprehending foreseeable danger and vigilant in protecting business invitees from these dangers. Such a duty could not be delegated. (See *Covey* v. *State of New York*, 200 Misc. 340, 342, 343 and cases cited therein.)

Though injuries flowing entirely from natural causes may not be the subject of an action the law is clear that where they "might have been avoided by human prudence and foresight" there is no exemption from liability. (*Woodruff* v. *Oleite Corp.*, 199 App. Div. 772, 773.) I believe there were questions of fact properly submitted to the jury to determine whether, in the light of the risks that were reasonably foreseeable, defendants' conduct measured up to the duty owned plaintiffs. The jury resolved these questions in plaintiffs' favor and I would not disturb their verdict. I vote for affirmance.

All concur, except Goldman, J., who dissents and votes for affirmance in an opinion. Present — McCurn, P. J., Vaughan, Kimball, Williams and Goldman, JJ.

Judgments and orders reversed on the law and facts, without costs of these appeals to any party, and complaints dismissed, without costs.