MARTA MELINDA DOCKERY, BY HER NEXT FRIEND, E. T. PULLEN, III v. WORLD OF MIRTH SHOWS, INC., AND MICHAEL DEMBROSKY, D/B/A M. D. AMUSEMENT COMPANY.

(Filed 19 May, 1965.)

**1. Master and Servant § 20—**

Where an activity is inherently dangerous unless precautionary measures in regard to the condition of the device and its operation are taken, public policy requires that the employer be held directly liable for injuries proximately resulting from the failure to take the necessary precautions, notwithstanding that the device is under the control of an independent contractor.

**2. Games and Exhibitions § 2—**

A general concessionaire who invites the public to visit a place of amusement or who shares in the proceeds of the admission fees, or who retains and exercises a measure of control over the premises, is ordinarily under the duty to inspect the premises and devices and to exercise oversight and supervision over their operation, and he will be held directly liable for injuries resulting from the failure to perform such duty, notwithstanding the apparatus causing the injury is operated by a sub-concessionaire.

**3. Same—**

The owner of a general concession is not an insurer of the safety of his patrons and is not required to guard against unlikely or unknown conditions or unforeseeable conduct of a patron, and ordinarily is not responsible for casual or isolated acts of negligence of a sub-concessionaire, but is under duty to exercise reasonable care commensurate with the perils and likelihood of injury to his patrons.

**4. Same— Evidence held for jury in action by patron of amusement ride to recover for injuries from fall.**

The evidence tended to show that the general concessionaire of a fair received a part of the admission charges and assumed responsibility for the amusements and agreed to indemnify the fair for any liabilities incurred from the operation of the amusement devices, that the attendant of the amusement ride in question left to the riders the closing and latching of the bars on the seats to secure their safety, that the bars were difficult to fasten, that on the occasion in question plaintiff was unable to fasten the bar when the ride was put in motion, that she rose to her feet in a crouched position with her hands on the wobbling bar and shouted to stop the ride, and that the momentum of the ride threw her therefrom to her injury. *Held:* The evidence is sufficient to be submitted to the jury on the question of the liability of the general concessionaire and does not show contributory negligence as a matter of law on the part of plaintiff.

**5. Same; Evidence § 16—**

In an action to recover for injuries resulting when plaintiff could not fasten the protective bar over the seat of the amusement ride in question and the machinery was put in motion by the attendant without ascertaining that the bars were fastened and the riders secure, testimony of other patrons to the effect that they rode on the device before and after the accident and that they found it difficult to fasten the protective bars, and that the attendant did not assist them in closing the protective bars, *held* competent as tending to show a prevailing defect in the mechanism and continuing negligence in the method of operation.

APPEAL by defendant, World of Mirth Shows, Inc., from *Hobgood, J.,* October 12, 1964, Session of FORSYTH.

Action to recover damages for personal injuries suffered by plaintiff when she fell from a "ride" operated at the Dixie Classic Fair.

The evidence favorable to plaintiff tends to establish these facts: The Dixie Classic Fair is an unincorporated association, is operated by a commission appointed by the Winston-Salem Foundation and has a manager in charge. The Fair was held in 1961 during the period October 10 to October 14. It entered into a contract with defendant, World of Mirth Shows, Inc. (Mirth), in which it was provided that Mirth should furnish certain amusements, 15 major rides and 15 major shows, from the operation of which the Fair would receive specified percentages of gross receipts and Mirth would indemnify the Fair for any loss or liability which might arise from the operation of the amusements. Mirth provided the amusements in accordance with the contract. One of the rides furnished was the "Scrambler." Mirth contracted with Michael Dembrosky, doing business as M. D. Amusement Company, to provide and operate this ride. Dembrosky, through his employees, "installed and operated the Scrambler and invited the public to ride on it by paying an admission charge." The Manager of the Fair had no contacts with Dembrosky; all of his dealings were with Mr.

Bergen, an official of Mirth. An employee of Mirth took the accounting and receipts of all amusements each day to the Superintendent of Admissions, who handled all the financial matters for the Fair. In the event of any complaints from members of the public, or anyone else, as to the operation of any activity of the Fair, the complaint was taken up with Mr. Bergen. Mirth advertised through the Dixie Classic Fair. The Fair gave out "news releases, pictures of attractions, and so on," through its advertising agents. The Scrambler is a merry-go-round type of ride having a central base with a center post extending upward in a casing from the base. The post and casing support a large metallic frame. The principal features of the frame are three upper arms which extend horizontally at even intervals from the top of the center post, and three lower horizontal arms, directly under the upper arms and only a few feet from the ground. At the ends of the arms are nests or clusters of 4 seats each which are attached to axes extending from the ends of the lower arms to the ends of the corresponding upper arms. When the ride is in operation the frame revolves clockwise about the center post and the seat clusters revolve counterclockwise about their respective axes; the ride is powered by an electric motor. In rotating, the seats do not follow a true circular path; they go outward and then jerk inward toward their center of rotation; they have no up and down motion, the motion is in and out and around. The seats have high backs which come nearly to the shoulders of a rider when seated; the backs extend around so as to encase both ends of the seats. There is a bucket or trough — "sort of a half tube" — for the feet; this provides a fender in front to about the height of a rider's knees; the trough is partially open at the right or outer end to permit entrance to the seat. At the front of the seat is a gate or bar; it is hinged at the left or inner end of the seat and swings horizontally forward and to the left when opened; it has a latch at the outer end somewhat like that of a refrigerator door — you pull a handle "and it opens, or slam it and it closes." The bar is for security of the riders; a rider's legs are under the bar when it is closed; it is 3 or 4 inches above the knees. About 4:30 in the afternoon of October 11, plaintiff, a 12-year old child, and three companions bought tickets and were admitted. They attempted to occupy a single seat but it was too crowded. Plaintiff and one of her companions went to another seat. The ride was about to start and they had to hurry. Plaintiff got in first and was on the left or inside portion of the seat. They tried to close the bar but the latch would not catch and the bar would not close. The attendant did not check the seats to see that the bars were closed. The ride started and plaintiff rose to her feet in a crouched or squatting position to call to the attendant. She shouted, "Stop! The door won't shut." She was shouting in a loud voice; she was

frightened. The attendant paid her no attention. The ride was moving faster and faster. She had her hand on the bar but it was moving back and forth. About the time the ride reached its maximum speed, the centrifugal force of the circular motion threw her across the legs of her companion in the bucket in front of the seat, the seat jerked inward and she was thrown through the open end of the bucket and fell out. The ride made two revolutions before it stopped. She was injured both internally and externally. A kidney was injured to such extent it had to be removed; she has several permanent scars. Other persons who rode the Scrambler at other times during the same day had difficulty in closing the bars; the attendant made no effort to see that the bars were closed and the riders were secure.

Defendant Mirth's evidence tends to show that plaintiff stood erect when the ride started, she appeared at first to be "just carrying on" and nothing seemed to be wrong, she later seemed frightened, the force of the ride would have forced her back in the seat and against her companion if she had remained seated, and the bars on the seats were examined after the accident and found to be in good condition — the latches caught and held when the bars were slammed shut.

Plaintiff alleges that defendant Mirth "assumed responsibility for the operation of all . . . rides at the fair" and exercised "supervision and control over them," the Scrambler "was an inherently dangerous device capable of inflicting serious injury . . . unless maintained in good operating condition, and unless operated with care and caution," Mirth well knew the Scrambler was inherently dangerous and it had the "obligation to inspect and maintain the Scrambler in good and safe operating condition for the protection of the . . . public," the duties and obligations of Mirth "in these respects were nondelegable to concessionaires and others," and Mirth was negligent "in failing to have the bar across the front of the 'Scrambler' seat in which the plaintiff was riding securely fastened and in failing to inspect the same and to see that it was securely fastened, in failing to inspect the same and to maintain it in good safe working condition in view of the hazardous nature of the ride, and such negligence . . . was the proximate cause of" plaintiff's injuries.

Defendant Mirth, answering, avers that the bar attached to the seat in which plaintiff was riding and the latch on the bar were not defective and were "more than adequate to secure the plaintiff in her seat and remained latched and secured" during her ride, the attendant "checked all seats including plaintiff's seat and after seeing that plaintiff was safely seated and that the bar was latched and secured, started the ride," plaintiff "continued to stand up in the face of obvious . . . danger to herself and negligently and carelessly disregarded the warn-

ings and appeals made to her to sit down," plaintiff's fall and injury were solely caused by her negligence, if defendant was negligent in any manner the negligence of plaintiff was a contributing cause of her injury, and Dembrosky, owner and operator of the Scrambler, was an independent contractor and not an agent of Mirth, and Mirth is not responsible for negligence on the part of Dembrosky.

Dembrosky could not be located and no process was served on him. The action proceeded against Mirth as the sole defendant.

The jury found that Dembrosky was not an agent of Mirth, that plaintiff was injured by the negligence of Mirth, and that plaintiff was not contributorily negligent. Damages were awarded. Judgment was entered in favor of plaintiff and against defendant Mirth for the amount stated in the verdict.

*J. F. Motsinger and Deal, Hutchins and Minor for plaintiff.*

*R. M. Stockton, Jr., and W. F. Maready, attorneys for World of Mirth Shows, Inc. Of counsel: Hudson, Ferrell, Petree, Stockton, Stockton & Robinson.*

MOORE, J. Defendant Mirth asserts that the negligence, if any, giving rise to plaintiff's fall and injuries consisted of acts and omissions of Dembrosky, an independent contractor, and the conduct of plaintiff in standing while the Scrambler was in motion.

In response to an issue submitted by the court, the jury determined that Dembrosky was not an agent or employee of Mirth. An employer is not ordinarily liable for injury resulting from dangerous conditions collaterally created by the negligence of an independent contractor. But where it is reasonably foreseeable that harmful consequences will arise from the activity of the contractor unless precautionary methods are adopted, the duty rests upon the employer to see that these precautionary measures are adopted, and he cannot escape liability by entrusting this duty to the independent contractor. The contractor may be liable for the same want of due care in not taking the necessary precautions, for the omission of which the employer is liable; but as to the employer, the liability is direct, and not derivative, since public policy fixes him with a nondelegable duty to see that the precautions are taken. *Evans v. Rockingham Homes, Inc.,* 220 N.C. 253, 17 S.E. 2d 125.

The presiding judge was of the opinion that the alleged relationship of employer and independent contractor between Mirth and Dembrosky did not necessarily absolve Mirth from liability under the facts and circumstances of the instant case, and he instructed the jury as follows with respect to the issue (third issue) of Mirth's negligence:

"If you find from the evidence and by its greater weight the Scrambler was such a ride as was likely to cause injury to passengers unless due care was exercised in its maintenance and operation, in view of the nature of the device, then it would be the duty of the defendant, World of Mirth Shows, to inspect the Scrambler in order to see that it was maintained in a reasonably safe condition, to supervise the operation of the Scrambler to such an extent as to see that it was operated with due care, and to see that the operator would check the gates or bars to the seats to see that they were securely latched and fastened and that the plaintiff was safely seated before starting it, and . . . these duties of inspection and supervision by World of Mirth, the defendant, could not be delegated to Dembrosky, his agents or employees, whether or not he was a concessionaire or an independent contractor; that such duties of supervision would remain the responsibility of the defendant, World of Mirth Shows, Incorporated, and such failure by Dembrosky would be attributed as a matter of law to World of Mirth, Incorporated, the defendant, and that such failure of World of Mirth to inspect and supervise was a proximate cause of plaintiff's injuries, then in that event the jury would answer the third issue 'Yes.' "

Defendant Mirth questions the applicability of the principles set out in the charge to the evidence presented. Whether the principle of nondelegable duty is applicable to the facts and circumstances, is an important consideration also in passing on Mirth's motion for nonsuit.

It is generally held that the owner of a place of amusement having a variety of attractions and devices or a general concessionaire actually engaged in the conduct of such place of amusement cannot avoid liability for injuries to patrons resulting from the defective or dangerous condition of the premises or from defective amusement apparatus or devices on the ground that such premises or devices are under the control of and used by a sub-concessionaire. Liability of such owner or general concessionaire is predicated either upon his nondelegable duty to maintain a reasonably safe place for the patrons, in accord with which he must answer for the negligence of the sub-concessionaire or the latter's employees in rendering the premises and devices unsafe, or merely upon the general ground that such owner or general concessionaire is responsible for his breach of duty to keep the premises, including the devices, reasonably safe, without reference to any separate act or omission of the sub-concessionaire. While there are some decisions to the contrary, the greater weight of authority is that such owner or general concessionaire will not be relieved from responsibility because the amusement or device is provided and conducted by the sub-con-

cessionaire, provided it is of a character that would probably cause injury unless due precautions are taken to guard against it; and this duty applies not only to the condition of the premises and device, but also to the management and operation where the device is of a character likely to produce injury unless due care is observed in its operation. The duty is a continuing one. 4 Am. Jur. 2d, Amusements and Exhibitions, § 64, pp. 186-8; 145 A.L.R., Anno. — Amusement — Negligence of Concessionaire, pp. 962-980; Restatement of the Law, Torts (1934), Vol. II, § 415, pp. 1122-6; *Richmond & M. Ry. Co. v. Moore's Adm'r.*, 27 S.E. 70 (Va. 1897); *Hollis v. Kansas City, Mo., Retail Merchants Ass'n.*, 103 S.W. 32 (Mo. 1907); *Stickel v. Riverview Sharpshooters' Park Co.*, 95 N.E. 445 (Ill. 1911); *Turgeon v. Connecticut Co.*, 80 A. 714 (Conn. 1911); *Hartman v. Tennessee State Fair Association*, 183 S.W. 733 (Tenn. 1916); *Johnstone v. Panama-Pacific International Exposition Co.*, 202 P. 34 (Cal. 1921); *Szasz v. Joyland Co.*, 257 P. 871 (Cal. 1927); *Birmingham Amusements v. Turner*, 128 S. 211 (Ala. 1930); *Engstrom v. Huntley*, 26 A. 2d 461 (Pa. 1942); *McCordic v. Crawford*, 142 P. 2d 7 (Cal. 1943); *Bauer v. Saginaw County Agricultural Society*, 84 N.W. 2d 827 (Mich. 1957); *Priebe v. Kossuth County Agricultural Ass'n, Inc.*, 99 N.W. 2d 292 (Iowa 1959). The cases here cited are only a few of the many cases found in the reports.

Matters of importance in determining existence and extent of the duty of such owner or general concessionaire to inspect premises and devices and to exercise oversight and supervision of operation of amusements are: Invitation to the public to attend — one, who expressly or by implication invites others to come upon the premises, has the duty to be reasonably sure that he is not inviting them into danger and to that end must exercise reasonable care for their safety. *Richmond & M. Ry. Co. v. Moore's Adm'r., supra; Engstrom v. Huntley, supra*. Failure to advertise does not relieve them of duty if they share in the proceeds. *McCordic v. Crawford, supra*. The duty is assumed by them when they retain and exercise a measure of control. *Hollis v. Kansas City, Mo., Retail Merchants Ass'n., supra; Lakeside Park Co. v. Wein*, 141 P. 2d 171 (Colo. 1943). Where the general operation of the place of amusement is admitted by the owner or general concessionaire, the injured patron is not required to show the precise arrangement between the owner or general concessionaire and the subconcessionaire. *Engstrom v. Huntley, supra*. There is responsibility only for perils discoverable by ordinary and reasonable inspection and oversight. *Hiatt v. Ritter*, 223 N.C. 262, 25 S.E. 2d 756; *Kuhn v. Carlin*, 76 A. 2d 345 (Md. 1950). As to the duty with respect to the methods of operation of apparatus and devices, the owner or general concessionaire

need not provide against unlikely or unforeseeable conduct of a patron *(Hiatt v. Ritter, supra),* and ordinarily is not responsible for casual or isolated acts of negligence of sub-concessionaire or his employee. *Kuhn v. Carlin, supra; Tuggle v. Anderson,* 263 P. 2d 822 (Wash. 1953).

An owner or general concessionaire is not an insurer of the safety of invitees. His duty is that of reasonable care under the circumstances. Where, for instance, the instrumentality or device is inherently dangerous and the patrons are children of tender years, the care exercised must be commensurate with the peril and the likelihood of injury. *Engstrom v. Huntley, supra.*

In this jurisdiction there seems to be only one case factually comparable to the case at bar — *Smith v. Agricultural Society,* 163 N.C. 346, 79 S.E. 632. Plaintiff paid admission to the county fair and was looking at preparations for a balloon ascension, a "free attraction." He was requested by one in charge to assist in holding the ropes attached to the balloon, and after doing so, and as he was leaving, the balloon suddenly ascended, and, his foot having caught in a loop of one of the ropes, he was carried aloft by the balloon. The evidence was conflicting as to whether the place was properly guarded or enclosed or the crowd was warned of the danger of going close to the balloon. Plaintiff sued the Agricultural Society which was conducting the fair; the Society defended on the ground, *inter alia,* that the balloonist was an independent contractor. The trial judge allowed defendant's motion for nonsuit. In reversing the nonsuit, this Court said (quoting 38 Cyc. 248) : " 'The owner of a place of entertainment is charged with an affirmative, positive obligation to know that the premises are safe for the public use, and to furnish adequate appliances for the prevention of injuries which might be anticipated from the nature of the performance, and he impliedly warrants the premises to be reasonably safe for the purpose for which they are designed.' " The Court states that the defenses of independent contractor does not . arise on the motion for nonsuit, it being an affirmative defense, but comments that "the owner 'is not exonerated because the exhibition where the injury was received was provided and conducted by an independent contractor.' " Citations of authority are meager and discussion is brief, but the opinion indicates that this Court follows the majority view in this field. It is noted that the acts and omissions, alleged to constitute negligence, involve the operation of the attraction or device.

*Davis v. City of Atlanta,* 66 S.E. 2d 188 (Ga. 1951), arose because of an injury suffered by plaintiff while riding on a "Scrambler." Plaintiff sued the City, owner of the fair grounds, the Fair Association and the concessionaire, operator of the Scrambler. Plaintiff alleged defen-

dants failed to inspect the Scrambler. The City had leased the grounds to the Fair Association which, in turn, leased a part of the grounds to the concessionaire. The City and the Association each received a percentage of the proceeds from the operation of the Scrambler, which was specified in the leases as "ground rent"; concessionaire, according to his lease, assumed absolute control of the ride and carried liability insurance. The City and the Fair Association defended on the ground that their liability was limited to the ordinary liability of a lessor. The Court held that because these parties advertised the fair and its attractions and thereby invited the public, and did not surrender the right of general control, they had the duty to inspect. It would seem that this case, in the legal aspects, is less favorable for a recovery by the injured patron than the case at bar.

The evidence in the instant case is sufficient to permit the jury to find these facts: Mirth, general concessionaire, agreed to provide rides and shows for the Dixie Classic Fair. It provided these amusements, among them the Scrambler which was operated by an attendant, an employee of the owner thereof, Dembrosky, sub-concessionaire. Mirth by contract assumed responsibility for the amusements and agreed to indemnify the Fair for any liability incurred by reason of the operation thereof. As per contract between Mirth and the Fair, the attractions were advertised by the Fair and the public was invited to attend. Mirth gave attention to all complaints, and daily reported and delivered all admission receipts of the amusements to the Superintendent of Admissions, an agent of the Fair. The Fair received a percentage of receipts; Mirth looked to the amusements for its compensation. Many, if not most, of the patrons of the Scrambler were children. The Scrambler was inherently dangerous if precautions were not taken to assure the safety of the riders. The bars on the seats of the Scrambler, designed to secure the safety of riders, were difficult to fasten. The procedure of the attendant was to leave to the riders the closing and latching of the bars and to start the motor and operate the ride without ascertaining that the bars were closed and latched and the riders secure. Reasonable inspection and oversight of the Scrambler while in operation would have disclosed the condition of the bars and the attendant's method of operation. Mirth failed to perform its duty of inspection and supervision, or, if it performed the duty, it failed to take precautions for the safety of riders. The difficulty in closing the bars and the neglect of the attendant to see that riders were secure proximately caused the injury to plaintiff.

In the operation of an amusement "ride," it is the duty of the operator to be alert and to see that the riders are safe during the operation. *Brown v. Columbia Amusement Co.,* 6 P. 2d 874 (Mont. 1931);

*Linthicum v. Truitt,* 80 A. 245 (Del. 1911). For a case involving a loose bar on a roller-coaster, see *Kahalili v. Rosecliff Realty, Inc.,* 141 A. 2d 301, 66 A.L.R. 2d 680 (N.J. 1958).

In our opinion the evidence is sufficient to withstand defendant Mirth's motion for nonsuit, and the trial judge applied appropriate legal principles in his consideration of the motion. The question of contributory negligence on the part of plaintiff was for the jury, and the jury resolved that question in favor of plaintiff. The principles of law applied by the court to the evidence in the excerpt from the charge set out above are substantially correct and proper.

Several witnesses were allowed to testify, over the objection of defendant, to the effect that they rode on the Scrambler both before and after the accident in which plaintiff was injured, they found it difficult to fasten the protective bars, the attendant did not assist them in closing the bars, he made no effort before or during the ride to ascertain that the bars were fastened and the riders secure, and he left it to the riders to close and latch the bars as best they could without any attention from him. This evidence was competent and essential in that it tends to show a prevailing defect in the mechanisms and a continuously negligent method of operation which a reasonably attentive inspection and supervision would have disclosed to defendant Mirth.

We have carefully considered all assignments of error and we find nothing sufficiently prejudicial in the conduct of the trial and the charge of the court to warrant a new trial.

No error.